**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 26, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

HAROLD DEAN HORNSBY,

  Plaintiff-Appellant,

 v.

JUSTIN JONES,[*] Director; RON
WARD; MELINDA GUILFOYLE;
LINDSEY SHARP; MARTY
SIRMONS; ART LIGHTLE;
CHARLIE ARNOLD; LINDA
LAZELLE; KEVIN PINKERTON,
GERALD DYKES; RICK BOYETT;
NORMA BULLOCK; and DORETHA
CLARK,

  Defendants-Appellees.

Nos.  05-5201 & 05-5222
(D.C. No. 04-CV-919-HDC-PJC)
(N.D. Okla.)

**ORDER AND JUDGMENT**[**]

Before **HENRY**, **BRISCOE**, and **MURPHY**, Circuit Judges.

---

[*]     On October 27, 2005, Justin Jones became the Director of the Oklahoma
Department of Corrections.  In accordance with Rule 43(c)(2) of the Federal
Rules of Appellate Procedure, Mr. Jones is substituted in his official capacity for
Ron Ward, who remains in his individual capacity.

[**]     After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
these appeals.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The cases are
therefore ordered submitted without oral argument.  This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel.  The court generally disfavors the citation of orders and
judgments; nevertheless, an order and judgment may be cited under the terms and
conditions of 10th Cir. R. 36.3.

These are companion appeals in plaintiff-appellant Harold Dean Hornsby's pro se prisoner civil rights case. Docket No. 05-5201 is an appeal from the district court's judgment in favor of defendants-appellees on Eleventh Amendment grounds and for failure to state a claim. Docket No. 05-5222 is an appeal from the district court's order denying Hornsby's motion to vacate the judgment. Although the district court erred in applying Eleventh Amendment immunity to Hornsby's equitable claims, that error was harmless because Hornsby failed to state a legally viable claim for relief. Accordingly, we affirm in both appeals.

## BACKGROUND

Hornsby is an inmate at Oklahoma's R. B. "Dick" Connor Correctional Center, a medium security prison. In December 2004, Hornsby filed a 42 U.S.C. § 1983 complaint against various prison officials and employees in their individual and official capacities, asserting due process, equal protection, and right-to-petition claims. Hornsby sought monetary, declaratory, and injunctive relief.

The district court screened Hornsby's complaint and ordered it dismissed, ruling that the Eleventh Amendment barred suit against defendants-appellees in their official capacities and that Hornsby failed to state a claim against

defendants-appellees in their individual capacities.[1] *See* 28 U.S.C. § 1915(e)(2)(B); *id.* § 1915A. On October 6, 2005, the district court entered judgment in favor of defendants-appellees. Three weeks later, Hornsby moved to vacate the judgment. Hornsby also filed a notice of appeal, designating the judgment. The district court construed the motion to vacate as seeking relief under Fed. R. Civ. P. 60(b) and summarily denied it. Hornsby then filed a notice of appeal designating the order denying his motion to vacate.

## DISCUSSION

### I. Appeal from Judgment (Docket No. 05-5201)

*Standard of Review*

"We review de novo the district court's decision to dismiss this case on Eleventh Amendment grounds and for failure to state a claim." *Harris v. Owens*, 264 F.3d 1282, 1287 (10th Cir. 2001); *see also Perkins v. Kansas Dep't of Corr.*, 165 F.3d 803, 806 (10th Cir. 1999). "Dismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." *Perkins*, 165 F.3d at 806. "In determining whether dismissal is proper,

---

[1]     The dismissal was with prejudice only as to the claims against defendants-appellees in their official capacities. The claims against defendants-appellees in their individual capacities were dismissed without prejudice. Despite the dismissal without prejudice, Hornsby did not file a motion to amend under Fed. R. Civ. P. 15(a).

-3-

we accept the allegations in the complaint as true and construe those allegations and any reasonable inferences therefrom in the light most favorable to Plaintiff." *French v. Adams County Detention Ctr.*, 379 F.3d 1158, 1159 (10th Cir. 2004). Because Hornsby proceeds pro se, we liberally construe his complaint. *Id.*

*Eleventh Amendment Immunity*

The Eleventh Amendment provides that "the Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." U.S. Const. amend. XI. Immunity is available when suits seeking damages are brought directly against a State, *Cornforth v. Univ. of Okla. Bd. of Regents*, 263 F.3d 1129, 1132 (10th Cir. 2001), or when a state official is sued in his or her official capacity, *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002). But suits seeking damages from state officials in their individual capacities, or suits seeking prospective injunctive or declaratory relief against state officers, are not barred by the Eleventh Amendment, *Cornforth*, 263 F.3d at 1132; *Robinson v. Kansas*, 295 F.3d 1183, 1188 (10th Cir. 2002).

Consequently, the district court erred to the extent it dismissed "[a]ll claims against Defendants in their official capacities . . . based on Eleventh Amendment immunity." *Hornsby v. Ward*, No. 04-CV-919-HDC-PJC, slip op. at 10 (N.D. Okla. Sept. 21, 2005) (dismissal order). The district court should have applied the Eleventh Amendment only to Hornsby's damages claims against

-4-

defendants-appellees in their official capacities. Hornsby's equitable claims were not subject to the Eleventh Amendment bar. Nevertheless, reversal is not warranted if Hornsby failed to plead a viable claim for equitable relief. *See* FRCP 61 (prescribing harmless error analysis). We, therefore, proceed to determine whether Hornsby's equitable claims, as well as Hornsby's claims for monetary relief against the defendants-appellees in their individual capacities, are legally cognizable.

*Due Process*

Hornsby alleged that his due process rights were violated when defendants-appellees (1) subtracted good-time credits based upon the recommendation of a single hearing officer, rather than a disciplinary committee; (2) segregated him from the general prison population; (3) required that he "secure two 30-day work evaluations in order to be eligible for" good-time credits, Compl. at 16; (4) failed to assign him work; and (5) provided inadequate legal materials and violated his "right to assist other inmates" in challenging their confinement, *id.* at 17.

Regarding the revocation of good-time credits, "a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration."

-5-

*Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005). Because Hornsby seeks the restoration of good-time credits on the grounds of past procedure, his claim is not cognizable under § 1983. *See Wilkinson*, 544 U.S. at 82 (indicating that a prisoner's claim, which would necessarily spell speedier release, "lies at the core of habeas corpus" and displaces § 1983 (quotation omitted)).

As for Hornsby's segregation away from the general prison population, due process is implicated only if he is subjected to a restraint that imposes an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (quotation omitted). Hornsby alleged that he "has been segregated . . . for over 120 days," and that inmates in the general population have greater access to the leisure and law libraries, "may immediately go on sick call," have greater job opportunities, and "are not given ice cream for not being violent." Compl. at 6.[2] We conclude that these disparities are not so onerous as to implicate due process protections. *See Penrod v. Zavaras*, 94 F.3d 1399, 1407 (10th Cir. 1996) (indicating that administrative segregation does not impose an atypical and significant hardship

---

[2]    Hornsby does not allege that the conditions of his confinement differ in any way from other segregated inmates. We assume, without deciding, that a due process claim can be advanced without such a comparison. *See Hatch v. District of Columbia*, 184 F.3d 846, 851 (D.C. Cir. 1999) (noting that "[t]he central difficulty in determining whether segregative confinement imposes atypical and significant hardship on the inmate is" deciding what part of the prison population to compare conditions with).

if it simply restricts privileges available to inmates in the general population); *Beverati v. Smith*, 120 F.3d 500, 504 (4th Cir. 1997) (determining that six months of administrative segregation was not atypical compared with the general prison population, even though segregated inmates did not receive clean clothing, linen, or bedding as often as required; could leave their cells only three to four times a week, rather than seven; were denied outside recreation; could not attend educational or religious services; and were served smaller food portions).[3]

Regarding Hornsby's allegation that he must "secure two 30-day work evaluations" to be eligible for good-time credits, even though prison policy establishes eligibility "30-days following date of misconduct," Compl. at 16, we discern no basis on which to deviate from the rule that a prison official's "failure to adhere to administrative regulations does not equate to a constitutional violation." *Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993).

---

[3] *Gaines v. Stenseng*, 292 F.3d 1222 (10th Cir. 2002), does not control our due process analysis, as that case involved disciplinary segregation and lacked allegations describing the ordinary incidents of prison life. In contrast, Mr. Hornsby's allegations relate to administrative segregation. Furthermore, he has provided information regarding the ordinary conditions of prison life, enabling us to decide at this stage of the proceedings that the conditions of his administrative segregation did not impose an "atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

As for Hornsby's allegation that he was denied work, there is "no constitutional obligation to provide an inmate with employment, even if a statute or regulation creates such an interest." *Penrod*, 94 F.3d at 1407.

Hornsby's final due process claims concern the adequacy of the prison's legal materials and his purported right to provide legal assistance to other inmates. Hornsby failed, however, to allege that he suffered any prejudice as a result of inadequate legal resources, *see Lewis v. Casey*, 518 U.S. 343, 351 (1996) (holding that an inmate alleging the denial of meaningful court access must establish not only the inadequacy of legal materials available to him, but also that the alleged shortcomings hindered his efforts to pursue a legal claim), and he has no constitutional right to provide legal assistance to other inmates, *see Shaw v. Murphy*, 532 U.S. 223, 228 (2001); *Smith v. Maschner*, 899 F.2d 940, 950 (10th Cir. 1990).

We conclude that the district court did not err in ruling that Hornsby failed to plead a viable due process claim.

*Equal Protection*

Hornsby alleged that his equal protection rights were violated because similarly situated inmates were not (1) "so arbitrarily administratively segregated" from the general population; (2) required to complete "two 30-day work evaluations" to be eligible for good-time credits; and (3) required to work for free or deprived of work. Compl. at 17.

Because Hornsby did not claim a fundamental right or differential treatment based on a suspect classification, he was required to allege that his treatment was not reasonably related to some legitimate penological purpose. *See Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994). Hornsby cannot contend that his placement in administrative segregation was unreasonable, given that prison officials have considerable discretion in their placement decisions. *See Fogle v. Pierson*, 435 F.3d 1252, 1261 (10th Cir. 2006). And he failed to allege that his work situation or the condition on his eligibility for good-time credits lacked a rational basis.

We conclude that the district court did not err in ruling that Hornsby failed to plead a viable equal protection claim.

*Right to Petition the Government*

Hornsby alleged that defendants-appellees interfered with his right to petition by (1) failing to provide adequate legal materials; (2) "restoring Plaintiff his LIBERTY in general population once Habeas Action is filed and then again depriving Plaintiff of his LIBERTY once the Habeas Action is DISMISSED," Compl. at 11; (3) failing to respond to his grievances, *id*. at 19; and (4) engaging in unspecified misconduct.

The constitutional right to petition the government for redress of grievances includes a reasonable right of access to the courts. *Hudson v. Palmer*, 468 U.S. 517, 523 (1984). As we have already noted, Hornsby did not allege any prejudice

in pursuing court access, and therefore, he cannot state a constitutional violation. Indeed, Hornsby's "invocation of the judicial process indicates that the prison has not infringed his First Amendment right to petition the government for a redress of grievances." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). And an inmate's rights are not per se compromised by the prison's refusal to entertain his grievances. *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991).

Hornsby also complained that he was punished for assisting other inmates in challenging the legality of their confinement, given a "one year grievance restriction" for invoking the prison's emergency grievance process, and "retaliated against . . . in this same manner, and worse, . . . because the Defendants do not want Plaintiff to inquire" about his level one classification and removal from drug and parole programs. Compl. at 19. Although prison officials may not retaliate against an inmate because of the inmate's exercise of the right to petition, *Fogle*, 435 F.3d at 1263-64, the inmate must allege specific facts "showing retaliation because of the exercise of . . . constitutional rights," *id.* at 1264 (quotation omitted). Hornsby cannot meet these requirements.

First, Hornsby had no constitutional right to provide legal assistance to other inmates, and therefore, could lawfully have been punished for doing so. *See Shaw*, 532 U.S. at 228; *Smith*, 899 F.2d at 950. Second, Hornsby's own allegations show that he was given a grievance restriction for abusing the emergency grievance process, rather than in retaliation for any protected activity.

-10-

*See* Compl. at 12-13. And third, Hornsby's vague and conclusory allegations of preventative retaliation are insufficient to plead a claim for relief, even affording his pro se complaint a liberal construction. *See Northington v. Jackson*, 973 F.2d 1518, 1521 (10th Cir. 1992).

As with the due process and equal protection claims, we conclude that the district court did not err in ruling that Hornsby failed to plead a viable right-to-petition claim. And since Hornsby has not suggested any amendments that could save these claims, we affirm the district court's judgment.

## II. Appeal from Post-Judgment Order (Docket No. 05-5222)

Under Fed. R. Civ. P. 60(b), the district court may relieve a party from a final judgment

> for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

We review the denial of a 60(b) motion for abuse of discretion. *See Price v. Philpot*, 420 F.3d 1158, 1167 n.9 (10th Cir. 2005). Rule 60(b) relief "is extraordinary and may only be granted in exceptional circumstances." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1009 (10th Cir. 2000).

In his motion, Hornsby argued that (1) he was denied notice and an opportunity to be heard; (2) the Eleventh Amendment had no bearing to the extent he sought declaratory and injunctive relief; and (3) either his complaint was legally adequate as pleaded or he should be allowed "to correct jurisdictional deficiencies" by adding new claims. Mot. to Vacate at 7. We have previously held, however, that the sua sponte dismissal provisions in 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b) do not require notice and an opportunity to respond. *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) (28 U.S.C. § 1915(e)(2)(B)); *Plunk v. Givens*, 234 F.3d 1128, 1129 (10th Cir. 2000) (28 U.S.C. § 1915A(b)). As for Hornsby's Eleventh Amendment argument, we conclude that while the district court should have corrected its erroneous application of immunity to Hornsby's equitable official-capacity claims, that error was harmless, given that Hornsby's complaint was devoid of a viable claim for relief. Finally, Hornsby's offer to "correct jurisdictional deficiencies" by adding new claims would not have addressed the inadequacy of the existing claims for relief.

Consequently, we discern no reversible error in the district court's order denying post-judgment relief.

## CONCLUSION

We AFFIRM the district court's judgment and its order denying the motion to vacate.

Entered for the Court


Michael R. Murphy
Circuit Judge