**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**January 27, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

RONALD JENNINGS FOGLE,

      Plaintiff - Appellant,

v.

CAPTAIN PIERSON, C.D.O.C.,
Committee Member and Chairperson
at (D.R.D.C.); WILLIAM BOKROS,
C.D.O.C., Administrative
Head/Director at (D.R.D.C.);
GEORGE MESKIMEN, Lt., C.D.O.C.,
Initiating Employee at (D.R.D.C.);
FOSNOT, C.D.O.C., Case Manager,
Committee Member of (D.R.D.C.); S.
EGAN, C.D.O.C., Case Manager,
Committee Member at (D.R.D.C.); LT.
NORTON, C.D.O.C., Programmer at
(D.R.O.C.); UNKNOWN
DEFENDANT #1, C.D.O.C.
Correctional Officer at (D.R.D.C.);
UNKNOWN DEFENDANT #2,
C.D.O.C. Correctional Officer at
(D.R.D.C.); UNKNOWN
DEFENDANT #3, C.D.O.C.
Correctional Officer at (D.R.D.C.);
JOHN R. CLARKSON, C.D.O.C.,
Committee Member at (S.C.F.); C.
WIERZHICKI, C.D.O.C., Committee
Member at (S.C.F.); McMONAGLE,
C.D.O.C., Case Manager, Committee
Member at (S.C.F.); PAUL
WILLIAMS, C.D.O.C., Committee

No. 05-1405

Member at (S.C.F.); T. CHASE,
C.D.O.C., Administrative Head at
(S.C.F.); NICHELS, C.D.O.C., Case
Manager, Committee Member at
(S.C.F.); M. EMILY, C.D.O.C.,
Administrative Head at (S.C.F.);
CATHY SLACK, C.D.O.C.,
Administrative Head at (C.S.P.); V.
RIDDLE, C.D.O.C., Committee
Chairperson at (C.S.P.); J. HUNTER,
C.D.O.C., Case Manager, Committee
Member at (C.S.P.); J. CARROLL,
C.D.O.C., Committee Chairperson at
(C.S.P.); D. COMB, C.D.O.C., Case
Manager, Committee Member at
(C.S.P.); JOE ORTIZ, C.D.O.C.,
Executive Director,

     Defendants - Appellees.

---

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 05-CV-1211)**

---

Submitted on the briefs:[*]

Ronald Jennings Fogle, filed a brief pro se.

---

Before **EBEL**, **McKAY** and **HENRY**, Circuit Judges.

---

    [*]After examining appellant's brief and the appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

**EBEL**, Circuit Judge.

---

Plaintiff-Appellant Ronald Fogle, a prisoner appearing *pro se*, appeals the district court's dismissal of his 42 U.S.C. § 1983 complaint alleging various civil rights violations committed by the Colorado Department of Corrections ("DOC"). He also argues that the district court failed to consider a number of claims that he raised in his pleadings. As Fogle was granted *in forma pauperis* ("*IFP*") status at the district court, any claim that is frivolous must be dismissed. Having reviewed his myriad claims, we conclude that not all are frivolous. We therefore AFFIRM in part, REVERSE in part, and REMAND for further proceedings.

## BACKGROUND

Fogle is incarcerated at the Limon Correctional Facility in Limon, Colorado. Prior to this incarceration, while a pretrial detainee at the Denver County Jail, he posed as a visitor and escaped by simply walking out of the facility. He was quickly apprehended, but the escape led to embarrassing media coverage of DOC officials. Fogle was returned to the Denver County Jail, where he served time in punitive segregation as punishment for the escape.

Shortly after finishing this punishment, Fogle was sentenced on the original felonies for which he was being held in the Denver County Jail when he walked out. He was transferred to a new prison facility, where he claims he was

immediately placed in administrative segregation, allegedly for the embarrassment that his escape caused DOC officials. Fogle remained in administrative segregation at three different state prisons from September 2000 until August 2003. During this time, he claims that he was kept in his cell 23 hours a day for 5 days each week and 24 hours a day the other 2 days each week, and was denied access to the telephone, the showers, outdoor exercise, the law library, and programs offered to general population inmates.

In June 2005, Fogle filed a § 1983 complaint with the district court, alleging various violations of his constitutional rights stemming from these conditions of his confinement. The district court granted Fogle leave to proceed *IFP*, although Fogle subsequently paid his full filing fee during the course of the proceedings below.

On August 12, 2005, the district court dismissed Fogle's complaint. Properly construing Fogle's *pro se* complaint liberally, see Lamb v. Rizzo, 391 F.3d 1133, 1135 n.1 (10th Cir. 2004), the district court found that he had raised six cognizable claims: (1) retaliation for the earlier jailhouse escape; (2) double jeopardy based on being punished twice for the escape; (3) violation of due process because the panels making his administrative segregation determinations were biased; (4) cruel and unusual punishment, primarily from his denial of outdoor exercise; (5) violation of due process because he was denied the

opportunity to earn "good time credits" while in administrative segregation; and (6) violation of equal protection because he was treated differently than other inmates. The district court considered and rejected each claim as legally frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i). Fogle appealed.

## DISCUSSION

Fogle's appeal raises a host of issues. As a threshold matter, Fogle claims that the district court improperly treated him as *IFP*—and, consequently, improperly considered his complaint under § 1915—because, after being granted *IFP* status, he paid his filing fee in full. We reject this claim because, once a party is granted *IFP* status, dismissal under § 1915 is proper notwithstanding any filing fee paid. We next consider the district court's suggestion that Fogle's claims might be barred by the relevant statute of limitations. We conclude that dismissal of his claims as time-barred is not appropriate at this stage in the proceedings. We then turn to the merits of those claims ruled on by the district court and conclude that it was error for the court to dismiss all of the claims as frivolous. Finally, we consider those claims not ruled on by the district court and make a threshold determination of which are frivolous and which deserve consideration on remand.

## A. Dismissal of claims because of *IFP* status

28 U.S.C. § 1915(e)(2)(B)(i) requires a district court to dismiss the complaint of a party proceeding *IFP* whenever the court determines that the claims are frivolous. Fogle claims that, because he paid his filing fee in full after being granted *IFP* status, the district court erred in dismissing under § 1915. However, § 1915 clearly provides that "[n]otwithstanding any filing fee . . . that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . is frivolous." 28 U.S.C. § 1915(e)(2)(B)(i) (emphasis added). Thus dismissal of Fogle's frivolous claims was proper.[1]

## B. Statute of limitations

Although not ruling on it, the district court suggested that any of Fogle's claims that arose before the final two months of his administrative segregation were barred by the statute of limitations. A complaint may be dismissed *sua sponte* under § 1915 based on an affirmative defense—such as statute of limitations—"only when the defense is obvious from the face of the complaint and no further factual record is required to be developed." Fratus v. DeLand, 49 F.3d 673, 674-75 (10th Cir. 1995) (alterations, quotations omitted). In other

---

[1]See Rowsey v. Swinson, No. 97-1382, 1998 WL 482800, *1 (10th Cir. Aug. 12, 1998) (unpublished); Moore v. Neal, No. 97-1420, 1998 WL 339713, *1 (10th Cir. June 24, 1998) (unpublished); Ricks v. Mackey, No. 97-3181, 1998 WL 133828, *2 (10th Cir. March 25, 1998) (unpublished).

words, a complaint may not be dismissed "by raising sua sponte a statute of limitations defense that was neither patently clear from the face of the complaint nor rooted in adequately developed facts." Id. at 675.

"Limitations periods in § 1983 suits are to be determined by reference to the appropriate state statute of limitations and the coordinate tolling rules . . . ." Hardin v. Straub, 490 U.S. 536, 539 (1989) (quotations omitted). We have made clear that the statute of limitations for § 1983 actions brought in Colorado is two years from the time the cause of action accrued. See, e.g., Blake v. Dickason, 997 F.2d 749, 750-51 (10th Cir. 1993). A § 1983 action "accrues when facts that would support a cause of action are or should be apparent." Fratus, 49 F.3d at 675 (quotations omitted). Fogle asserts that he was in administrative segregation from September 2000 until August 2003; he filed this action in June 2005. Many of his claims are based on facts that occurred at or near the beginning of his confinement; if no tolling provision applies, then it appears those claims are time barred.

Fogle's limitations period was not tolled by Colorado statute because Fogle was not "a minor under eighteen years of age, a mental incompetent, or a person under other legal disability." See Colo. Rev. Stat. § 13-81-101(3).[2] However,

---

[2]No Colorado court has held that an imprisoned person fell into the "other legal disability" category.

Colorado also recognizes the doctrine of equitable tolling, which applies "when flexibility is required to accomplish the goals of justice," such as "when plaintiffs did not timely file their claims because of 'extraordinary circumstances' or because defendants' wrongful conduct prevented them from doing so." Morrison v. Goff, 91 P.3d 1050, 1053 (Colo. 2004) (quotations omitted). Fogle asserted in his complaint that the defendants kept him locked in his cell 23 hours a day for 5 days each week and 24 hours the other two days with no access to, *inter alia*, law library clerks or prison lawyers. It is not "patently clear" that these are not the sort of extraordinary circumstances that would permit equitable tolling, and thus § 1915 dismissal of the complaint on the ground that it is barred by the statute of limitations is not appropriate.

## C. Claims ruled on by the district court

We generally review a district court's dismissal for frivolousness under § 1915 for abuse of discretion. See Fratus, 49 F.3d at 674. However, where the frivolousness determination turns on an issue of law, we review the determination *de novo*. See Conkle v. Potter, 352 F.3d 1333, 1335 n.4 (10th Cir. 2003). "A district court may deem an in forma pauperis complaint frivolous only 'if it lacks an arguable basis either in law or in fact.'" Fratus, 49 F.3d at 674 (quoting Neitzke v. Williams, 490 U.S. 319, 325 (1989)). In other words, dismissal is only appropriate "for a claim based on an indisputably meritless legal theory" and the

frivolousness determination "cannot serve as a factfinding process for the resolution of disputed facts." Id. at 674, 675 (quotations, citations omitted).

On appeal, Fogle challenges the district court's dismissal of all but his retaliation claim. We consider these claims in turn.

### 1. Due process violation stemming from administrative segregation hearings

Fogle claims that the hearing committees that initially determined and periodically reviewed his administrative segregation placement were biased, in violation of his due process rights. The district court rejected Fogle's argument, reasoning that he did not have a constitutionally protected liberty interest in not being placed in administrative segregation such that due process concerns were triggered. We disagree.

Prison conditions that "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" may create a liberty interest protected by the Due Process Clause. Sandin v. Conner, 515 U.S. 472, 484 (1995). The district court abused its discretion in concluding that there was no arguable basis that a three-year period of administrative segregation—during which time Fogle was confined to his cell for all but five hours each week and

denied access to any outdoor recreation—is not "atypical." Cf. Gaines v. Stenseng, 292 F.3d 1222, 1225-26 (10th Cir. 2002) (reviewing dismissal of § 1983 claim under § 1915 *de novo* and ruling that, without "carefully examin[ing] the conditions of the prisoner's confinement," it was error to find 75-day disciplinary segregation not atypical).[3]

## 2.  Cruel and unusual punishment

Fogle contends that he suffered unconstitutionally cruel and unusual punishment by being denied all outdoor exercise for the three years he was in administrative segregation.  To succeed on an Eighth Amendment claim, a plaintiff must allege facts demonstrating that "the deprivation is sufficiently serious" and that prison officials acted with "deliberate indifference to inmate health or safety."  Perkins v. Kansas Dep't of Corr., 165 F.3d 803, 809 (10th Cir. 1999).  The district court found Fogle's claim frivolous because (1) he had not alleged that he was deprived of <u>all</u> opportunity for exercise and (2) he had not

---

[3]Fogle also claims that he was denied the "minimum requirements of procedural due process" afforded prisoners who are being deprived of a liberty interest—procedures like written notice of the disciplinary hearing, at least 24 hours to prepare for the hearing, and the ability to call witnesses on his behalf. See Wolff v. McDonnell, 418 U.S. 539, 563-67 (1974).  The district court did not address this claim, presumably because it concluded that Fogle was not being deprived of any liberty interest.

Fogle's complaint suggests that he was placed in administrative segregation with no hearing whatsoever.  Assuming Fogle succeeds in demonstrating the deprivation of a liberty interest, such arbitrary action would certainly seem to violate the principles outlined in Wolff.

alleged that DOC officials acted with deliberate indifference. Again, we disagree.

First, the district court erred as a matter of law in concluding that a prisoner must allege denial of all exercise, not just outdoor exercise, to present an "arguable" claim.[4] As we have explained,

> There is substantial agreement among the cases in this area that some form of regular <u>outdoor</u> exercise is extremely important to the psychological and physical well being of inmates, and some courts have held a denial of <u>fresh air and exercise</u> to be cruel and unusual punishment under certain circumstances.

Bailey v. Shillinger, 828 F.2d 651, 653 (10th Cir. 1987) (per curiam) (emphasis added); <u>see also</u> Perkins, 165 F.3d at 810 ("[W]e conclude the district court here erred when it held that plaintiff's allegations about the extended deprivation of <u>outdoor</u> exercise showed no excessive risk to his well-being.") (quotations, alterations omitted) (emphasis added).

Additionally, the district court erred in finding that Fogle had not alleged that the DOC officials were deliberately indifferent.

> For a prison official to be found liable of deliberate indifference under the Eighth Amendment, the official must know of and disregard an excessive risk to inmate health or safety . . . . Whether a prison official had the requisite knowledge of a substantial risk is a question of fact . . . <u>and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.</u>

Perkins, 165 F.3d at 809-10 (quotations, alterations omitted) (emphasis added).

---

[4]Fogle acknowledges that he is allowed access to a cell with a pull-up bar a few times each week.

- 11 -

Here, we think it is clear that a factfinder might conclude that the risk of harm from three years of deprivation of any form of outdoor exercise was obvious and that DOC officials disregarded that risk by keeping Fogle in administrative segregation.

### 3. Equal protection

Fogle alleges that he has been denied equal protection because he has been treated differently than other inmates while he was in administrative segregation. "Equal protection is essentially a direction that all persons similarly situated should be treated alike." Grace United Methodist Church v. City of Cheyenne, 427 F.3d 775, 792 (10th Cir. 2005) (quotations omitted). Liberally construing Fogle's pleadings, he seems to be raising three variations of his equal protection argument: first, that, during his time in administrative segregation, he was treated differently than inmates in the general prison population; second, that he was treated differently than others who committed "walk-away" escapes and were not placed in administrative detention; and third, that he was treated differently than other similarly situated inmates in administrative segregation.

In order to succeed on his first equal protection claim, Fogle would have to show that he was "similarly situated" to those general population inmates, see Barney v. Pulsipher, 143 F.3d 1299, 1312 (10th Cir. 1998), and that the difference in treatment was not "reasonably related to legitimate penological interests,"

Turner v. Safley, 482 U.S. 78, 89 (1987). The district court correctly noted that Fogle was, by definition, not similarly situated to general population inmates during his time in administrative segregation.

Fogle's second claim is expressly foreclosed by this court's decision in Templeman v. Gunter, 16 F.3d 367 (10th Cir. 1994). There, as here, a Colorado state prisoner who had been in administrative segregation brought a § 1983 action alleging that his placement in administrative segregation violated equal protection; that claim was dismissed by the district court as frivolous. Id. at 368. We affirmed the dismissal, holding that the prisoner's claim could not succeed because the placement in administrative segregation is in the discretion of the DOC, meaning they can consider "whatever . . . seems relevant in making the qualitative judgment how to classify an individual inmate" and that

> it is "clearly baseless" to claim that there are other inmates who are similar in every relevant respect. Not only might the DOC classify inmates differently because of slight differences in their histories, but they also might classify inmates differently because some still seem to present more risk of future misconduct than others. [A prisoner's] claim that there are no relevant differences between him and other inmates that reasonably might account for their different treatment is not plausible or arguable.

Id. at 371 (citation omitted).

Similarly, Fogle's third claim fails in light of our reasoning in Templeman. Fogle alleges that no other state inmate was placed in administrative segregation for three years unless that inmate had violated the Code of Penal Discipline, and

also that no other inmate who was placed in administrative segregation based only on a so-called "600-02 removal from population" designation—as he claims he was—served such a lengthy stint.[5]  We assume that the prison has the same discretion in determining the length of segregation as they do in determining the initial placement in segregation.  Given this, it is not plausible that "there are no relevant differences between [Fogle] and other inmates that reasonably might account for their different treatment."  Templeman, 16 F.3d at 371.  As a result, Fogle cannot establish that he was treated differently than "similarly situated" inmates.

### 4.  Double jeopardy

Fogle argues that he was "punished" twice for his escape—once at the Denver County Jail and again by being placed in administrative segregation by the DOC—in violation of his right against double jeopardy.  The district court ruled that this claim lacked merit, and we agree.  Because the Double Jeopardy clause only applies to proceedings that are "essentially criminal" in nature, see Breed v. Jones, 421 U.S. 519, 528 (1975), "it is well established that prison disciplinary sanctions"—such as administrative segregation—"do not implicate" double jeopardy protections.  Wirsching v. Colorado, 360 F.3d 1191, 1205 (10th Cir.

---

[5]Though it is not completely clear from Fogle's pleadings, it appears that placement in administrative segregation because of a 600-02 designation is less serious than placement there for violating the Code of Penal Discipline.

- 14 -

2004).

**5. Due process violation stemming from inability to earn time credits**

Fogle contends that his due process rights were violated when he was denied the opportunity to earn "earned time" credits while in administrative segregation. This claim was properly dismissed as frivolous, as Fogle has no constitutionally-protected liberty interest in earning the credits. As this court explained in <u>Templeman</u>, denying a prisoner <u>mandatory</u> earned time credits—<u>i.e.</u>, those to which he has some entitlement—would deprive him of a liberty interest if those credits advance his mandatory date of release on parole. 16 F.3d at 370. However, where, as here, the credits are discretionarily awarded, "the defendants have not deprived [Fogle] of any earned time to which he was <u>entitled</u>" and thus no liberty interest is involved. <u>See</u> <u>id.</u> (emphasis added); <u>see also</u> Colo. Rev. Stat. § 17-22.5-302(1) ("[E]arned time . . . <u>may</u> be deducted from the inmate's sentence upon a demonstration . . . that he has made substantial and consistent progress in [a number of categories].") (emphasis added).[6]

_____

[6]Fogle argues that our decision in <u>Templeman</u> was wrongly decided because the court failed to consider another Colorado statute dealing with inmate labor. That statute, Fogle alleges, creates the right of an inmate to work which, in turn, creates a right to earn good time credits, as the credits are tied, in part, to work performance. However, even though work performance is a criteria in awarding earned time credits, those credits are still awarded discretionarily. In any event, "[w]e are bound by the precedent of prior panels absent en banc reconsideration or a superseding contrary decision by the Supreme Court." <u>Zurich North America</u>

(continued...)

- 15 -

**D. Claims not ruled on by the district court**

In a supplemental brief to this court, Fogle argues that he raised several claims below that the district court failed to address. Normally, "a federal appellate court does not consider an issue not passed upon below." Fisher v. Oklahoma Health Care Auth., 335 F.3d 1175, 1186 (10th Cir. 2003) (quotations omitted). However, § 1915 mandates the dismissal of a claim contained in an *IFP* complaint "at any time" a court deems the complaint to be frivolous. 28 U.S.C. § 1915(e)(2)(B)(i). Thus we will determine whether any of Fogle's unaddressed claims have "an arguable basis either in law or in fact," Fratus, 49 F.3d at 674, and remand only those claims for the district court to address in the first instance.

Fogle's supplemental brief simply recites many of the conditions of his administrative segregation confinement without necessarily explaining how his constitutional rights were violated. However, liberally construing Fogle's *pro se* brief, we believe he is raising the following equal protection claims related to his time in administrative segregation: (1) being denied the opportunity to attend self-help programs that general population inmates may attend; (2) being denied the opportunity to attend certain "recommended" programs; (3) being denied the opportunity to earn the same wage as general population inmates; (4) being

---

[6](...continued)
v. Matrix Service, Inc., 426 F.3d 1281, 1291 n.8 (10th Cir. 2005).

denied the opportunity to contact his family in the same manner as general population inmates; and (5) being denied the opportunity to purchase commissary items that general population inmates may purchase. Additionally, we construe Fogle's brief to allege: (1) retaliation by DOC officials for exercising his First Amendment right to speak, i.e., to complain about his placement in administrative segregation; (2) a violation of First Amendment rights by being denied the opportunity for church fellowship; (3) denial of access to the prison law library; and (4) a further argument that he was denied due process by being placed in administrative segregation without a hearing.

As a threshold matter, we must determine if Fogle raised any or all of these claims below. If he did not, the claim(s) are waived and may not be considered on remand. See Cummings v. Norton, 393 F.3d 1186, 1190 (10th Cir. 2005). We conclude that all but his claim of an equal protection violation based on denial of access to the commissary were raised below. We now turn to the properly preserved claims.

**1. Equal protection**

We conclude that all of Fogle's equal protection arguments are "indisputably meritless" and thus must be dismissed as frivolous. The claims are, in essence, claims that the restrictions placed on inmates in administrative segregation are more burdensome than the restrictions placed on general

population inmates.  However, as noted above, Fogle was not similarly situated to general population inmates while he was in administrative segregation.[7]

## 2.  Retaliation

As for Fogle's retaliation claim, we believe that it is not so "indisputably meritless" as to be dismissed at this state.  Fogle alleges that he was "complaining" about his placement in administrative segregation and threatening to file suit; in response, a DOC official told him that if he did not stop complaining he would be transferred to long-term administrative segregation at another facility.  Fogle did not stop protesting, and he was subsequently transferred.

"[P]rison officials may not retaliate against or harass an inmate because of

---

[7]To the extent that Fogle's claim of denial of familial contact is being raised under a theory other than equal protection, it does not change our determination that the claim is frivolous.  "[T]he Supreme Court has held that inmates have no right to unfettered visitation.  Rather, prison officials necessarily enjoy broad discretion in controlling visitor access to a prisoner . . . ."  Peterson v. Shanks, 149 F.3d 1140, 1145 (10th Cir. 1998) (citation omitted).

To the extent that Fogle's claim of being denied the opportunity to attend "recommended programs" is being raised under a theory other than equal protection, Fogle has failed to plead facts sufficient to allow us to determine whether he might be entitled to relief.  Fogle nowhere specifies what sort of programs he is referring to, whether other inmates were allowed to attend the programs, or whether DOC officials ever indicated that he would be allowed to attend.  *Pro se* status "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based. . . . [C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based."  Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

the inmate's exercise of his constitutional rights. . . . [However,] [a]n inmate claiming retaliation must allege <u>specific facts</u> showing retaliation because of the exercise of the prisoner's constitutional rights." <u>Peterson</u>, 149 F.3d at 1144 (quotations omitted) (emphasis in original). Though it is not entirely clear from the pleadings, Fogle's "complaints" could be referring to internal prison appeals and/or formal grievances to prison officials. "[S]everal circuits have held that a prisoner's first amendment right to petition the government for redress of grievances encompasses the filing of inmate administrative appeals." <u>Hines v. Gomez</u>, 853 F. Supp. 329, 331 (N.D. Cal. 1994) (citing cases). Moreover, Fogle specifically alleges that the retaliation was a direct result of his protestations. Thus there is an <u>arguable</u> basis for this claim; if in fact DOC officials retaliated against Fogle based on his filing administrative grievances, they may be liable for a violation of his constitutional rights.

**3. Denial of church fellowship**

Fogle's claim of denial of church fellowship is not so patently frivolous as to demand dismissal.

> The First Amendment does not preclude prisons from restricting inmates' religious practices, so long as prison authorities afford prisoners reasonable opportunities to exercise their sincerely held religious beliefs. Four factors must guide a court's assessment of the reasonableness of constraints on religious practice:
>
> First, the court considers whether there is a logical connection between the prison regulation and the asserted penological interest. Second, the

- 19 -

court considers whether alternative means of exercising the religious right in question remain open to inmates. Third, the court assesses the impact the accommodation of the right in question would have on guards, other inmates, and on the allocation of prison resources. Fourth, the court considers whether any policy alternatives exist that would accommodate the right in question at de minimis cost to the prison.

Wares v. Simmons, 392 F.3d 1141, 1143 (10th Cir. 2004) (citation omitted).

Fogle alleges that he was denied all opportunity for "Christian fellowship" while in administrative segregation. It is at least arguable that such denial is an unreasonable constraint on Fogle's sincerely held religious beliefs.

**4. Denial of access to prison law library**

We also conclude that Fogle should be allowed to pursue his claim of denial of access to the prison law library on remand. The Supreme Court has held that prisoners do not have "an abstract, freestanding right to a law library or legal assistance" and therefore an inmate must "demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." Lewis v. Casey, 518 U.S. 343, 351 (1996).

Liberally construing Fogle's pleadings, he alleges that he was denied access to the law library, law library clerks, and jailhouse lawyers to assist him in preparing this case. While it is true that to ultimately succeed on this claim, Fogle would need to explain, for example, exactly what legal materials he was seeking, see McBride v. Deer, 240 F.3d 1287, 1290 (10th Cir. 2001), we do not believe his claim is "indisputably meritless." He has alleged that he was

- 20 -

completely denied access to the law library and its accompanying resources and that the denial prevented him from filing the claims in this case, some of which we have deemed non-frivolous.

### 5. Conditions of administrative segregation

Finally, we consider Fogle's claim that the conditions of administrative segregation—daily cell searches, 24-hour electric lighting, no privacy—make assignment to administrative segregation "atypical" enough to require a due process hearing before being so assigned. As we have already concluded that the district court improperly dismissed Fogle's procedural due process claim, we need not address this argument. However, we note that these conditions should be considered in making the determination of whether Fogle had a liberty interest in not being assigned to administrative segregation. See Wilkinson v. Austin, --- U.S.---, 125 S. Ct. 2384, 2395 (2005) (noting conditions of super-maximum security prison and concluding that "[w]hile any of these conditions standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context").

### CONCLUSION

Fogle raises five claims that have an arguable basis in law or fact and thus survive dismissal under § 1915(e)(2)(B)(i): his claim that he was not given proper due process before being assigned to administrative segregation; his claim of

cruel and unusual punishment stemming from the denial of all outdoor recreation for three years; his claim of retaliation for the exercise of his First Amendment rights; his claim of denial of "Christian fellowship"; and his claim of denial of access to the law library.  Accordingly, we AFFIRM in part, REVERSE in part, and REMAND this case for proceedings not inconsistent with this decision.