**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**October 30, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

GEORGE R. MALLARD,

Plaintiff-Appellant,

v.

BOB TOMLINSON, Plant Manager,
OCI; FRED PRICE, Supervisor, OCI,

Defendants-Appellees.

No. 06-6019
(D.C. No. 04-CV-1382-T)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, Chief Judge, **O'BRIEN** and **McCONNELL**, Circuit Judges.

Appellant, George R. Mallard, an Oklahoma state prisoner, appeals from

the district court's order denying his complaint under 42 U.S.C. § 1983. The

complaint alleged that while Mr. Mallard was a prison laborer for Oklahoma

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. The court generally disfavors the citation of orders and
judgments; nevertheless, an order and judgment may be cited under the terms and
conditions of 10th Cir. R. 36.3.

Correctional Industries (OCI), two of his supervisors, defendants Bob Tomlinson and Fred Price, improperly had him transferred to a lower paying job. Mr. Mallard stated that he was transferred because he is black and because he had previously filed a grievance regarding Mr. Price. The district court granted summary judgment to defendants and Mr. Mallard appealed. Exercising our jurisdiction under 28 U.S.C. § 1291, we affirm.

BACKGROUND

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment shall be granted to a party

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Nevertheless, a factual dispute is only "genuine" if the evidence and the inferences drawn therefrom, when viewed in the light most favorable to the nonmoving party, are "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). As held by this court:

> The nonmoving party may not rest upon the mere allegations or denials of [his] pleading. The nonmoving party must go beyond the pleadings and establish, through admissible evidence, that there is a genuine issue of material fact that must be resolved by the trier of fact. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Salehpoor v. Shahinpoor*, 358 F.3d 782, 786 (10th Cir. 2004) (quotation omitted). We are aware, however, that "[a] pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

Mr. Mallard began working for OCI in 1996 in its "furniture renovation" project. The furniture renovation project closed in 2001 and he was transferred to the "housing project." He was subsequently transferred from the housing project to the modular furniture project on April 16, 2004.[1] R., Doc. 15, Attach. 2 at 9 (Mr. Mallard's Request to Staff); *Id.*, Attach. 4 at 1. The propriety of the final transfer is at issue in this case.

According to Mr. Mallard, he and "several of [his] co-workers, inmates: **Chuck Shaw, Jimmy Burks, Charlie Warner and Robert Turner**, were moved from OCI Furniture Renovation to Modular Furniture, and **Ron Fisher** was moved from Modular Furniture to Housing." R., Doc. 22 at 2 and Doc. 32 at 2 (boldface in original).[2] He stated that the transfers "[left] only the white inmate workers in those Departments," without identifying to which departments he was

---

[1] The parties refer to the various sections of OCI as either "departments" or "projects." It appears likely that Mr. Mallard worked in the same paint or stain booth while working for the furniture renovation and housing projects.

[2] It is unclear how this statement comports with Mr. Mallard's acknowledgment in other parts of the record and on appeal that he has been "demoted" twice: once, in 2001, from the furniture renovation project to the housing project, and again, in 2004, from the housing project to the modular furniture project.

referring. R., Doc. 22 at 2. Further, of the inmates moved, he was dropped to "pay grade four" while the others remained at "pay grade five" despite the fact that he was the most experienced worker.

Mr. Mallard stated that Mr. Price was his supervisor at OCI and that Mr. Tomlinson was the plant manager. He did not, however, specifically describe what role, if any, each played in his transfer. He acknowledged that when he complained about the pay cut he:

> was told by Defendants that due to the reduction in housing they moved several workers from Housing to Modular, and that Pay Grade Five (5) is a dedicated position for floor leads–that no one transferred would be moved at pay grade five (5) due to their attempting to avoid positions in Housing by transfers.

*Id*. at 3. Mr. Mallard, however, disputed this explanation, stating that "there have been several OCI Job movements/demotions similar (if not identical) to [his] Job movement/demotion where fellow inmate workers did not lose their Pay grade Five (5) status during the transfer and completely segregated the former workers area with white co-workers only." *Id*. at 4. According to Mr. Mallard, the transfer occurred not only for racial reasons but also in retaliation for his "being vocally outspoken about [the defendants'] administrative unfairness." *Id*. at 3.

-4-

A *Martinez* report was prepared regarding Mr. Mallard's complaints containing, among other evidence, the affidavits of Mr. Price and Mr. Tomlinson.[3] Mr. Tomlinson also submitted a second affidavit as part of the defendants' final motion for summary judgment. While Mr. Price averred that he played no role in Mr. Mallard's transfer, Mr. Tomlinson stated that Mr. Mallard was transferred as part of an reduction in force (RIF) necessitated by decreased customer orders. According to the *Martinez* report and Mr. Tomlinson's affidavits, OCI's housing department shipped $2,405,461 worth of products in fiscal year 2003, but only $607,541 worth of products in fiscal year 2004. Similarly, the number of inmates employed by OCI was cut from 152 in fiscal year 2003 to 62 by the end of January 2005. The record shows that as part of this RIF four Caucasian inmates and seven African-American inmates, including Mr. Mallard, were transferred out of the housing department on April 16, 2004;[4] a Caucasian inmate was transferred on June 16, 2004; and one Native American inmate, one Caucasian inmate, one Hispanic American inmate, and one African-American inmate were transferred on

---

[3] "A *Martinez* report is a judicially authorized investigative report prepared by prison officials to help the court determine if a pro se prisoner's allegations have any factual or legal basis." *Simkins v. Bruce*, 406 F.3d 1239, 1240 n.2 (10th Cir. 2005) (quotation omitted).

[4] None of these inmates were allowed to stay at pay grade five.

January 16, 2005.[5]  The *Martinez* report contains a copy of what appears to be a memo dated April 7, 2004, listing the eleven inmates that were to be reassigned to the modular furniture project starting April 16, 2004.  Four of the inmates from the list, Florence Fisher, Ronnie Dunford, Randall Kinnaman, and Mr. Mallard, were transferred to the modular furniture project from the housing paint booth.  Of these four, Mr. Kinnaman is Caucasian and the other three are African-American.  Two of the inmates, Mr. Mallard and Mr. Fisher, were at pay grade five and had their wages cut.  Despite the fact that Mr. Mallard's wages were cut ten cents an hour, he was still making twenty to thirty cents an hour more than the new position usually paid.  The one inmate who remained working in the paint booth, Robert Wilson, a Caucasian, was retained because he was authorized to operate the housing department woodworking equipment in addition to working in the paint booth.  Around the same period in time as the transfers were occurring, Ron Fisher, another Caucasian inmate, was transferred into the housing department because he was the sole inmate to possess certain design software skills and could prepare the department's design drawings.

As to the retaliation claim, Mr. Tomlinson acknowledged that approximately nine months before the transfer, Mr. Mallard had come to him, informed him that Mr. Price was giving some inmates extra hours of work in lieu

---

[5]    The record does not specify how the remaining force reduction was accomplished, whether more transfers occurred, or whether some inmates were laid-off altogether.

of awarding bonuses, and complained that he felt he was being discriminated against because he was not being given any extra hours.  Mr. Tomlinson averred that when he was told that bonus hours were being given he stopped the practice.

ANALYSIS

Mr. Mallard claims that his transfer to modular furniture (1) was racial discrimination in violation of the Fourteenth Amendment right to equal protection, and (2) was retaliation for his filing an administrative grievance in violation of the First Amendment.

1.  Mr. Price

In awarding summary judgment to Mr. Price on both claims, the district court correctly noted that Mr. Mallard did not deny Mr. Price's averment that he played no role in the transfer.  Since Mr. Mallard had to show Mr. Price's personal involvement in the alleged discrimination or retaliation in order to establish personal liability under 42 U.S.C. § 1983, *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996), summary judgment was proper.

2.  Mr. Tomlinson–Racial Discrimination

In awarding summary judgment to Mr. Tomlinson on the racial discrimination claim, the district court correctly applied the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), as adapted for use in a RIF context.

While *McDonnell Douglas* involved a Title VII claim for failure to hire, the analytical framework it pioneered applies equally to claims brought pursuant to section 1981, as well as to § 1983 claims based on allegations of racial discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment.

*English v. Colo. Dep't of Corr.*, 248 F.3d 1002, 1007 (10th Cir. 2001) (quotation omitted).

In order to survive summary judgment, a plaintiff relying on *McDonnell Douglas* bears an initial burden of establishing a prima facie case intended to eliminate the most common nondiscriminatory reasons that might account for the adverse employment action. Once the plaintiff has established a prima facie case, the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for taking an adverse employment action against the plaintiff. If the defendant successfully meets its burden of production, the burden shifts back to the plaintiff to put forth evidence sufficient to allow a jury to find that the defendant's reason is pretextual, *e.g.*, that it is unworthy of belief.

*Id.* at 1008 (citation, quotation, and alteration omitted). Generally, in order to establish a prima facie case a plaintiff must prove "(1) he belongs to a protected class; (2) he was qualified for his job; (3) despite his qualifications, he was discharged; and (4) the job was not eliminated after his discharge." *Id.* In an RIF context, however, since the plaintiff can not prove that his job was not eliminated after his discharge, the fourth element is modified to require the plaintiff to establish "that there is some evidence the employer intended to discriminate against [him] in reaching its RIF decision." *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1165 (10th Cir. 1998). In this case, this fourth element could

have been established by circumstantial evidence that Mr. Mallard was treated less favorably than Caucasian employees during the RIF. *Id*.

The district court held that Mr. Mallard had not established he was treated less favorably than Caucasian employees during the RIF and, even if he had made out his prima facie case, he had not presented evidence that Mr. Tomlinson's non-discriminatory reason was a pretext for discrimination. We agree.

Mr. Mallard failed to respond in a meaningful way to Mr. Tomlinson's averment that the transfer was necessary in order to avoid lay-offs during the RIF. He did not dispute that there had been a precipitous drop in housing department business or that the workforce in that department had been drastically curtailed. In fact, in his response to the summary judgment motion, Mr. Mallard did not directly dispute or even address any of the factual findings in the *Martinez* report. Instead, he simply restated the claims contained in his amended complaint, in most cases word for word. He made no effort to explain who Chuck Shaw, Jimmy Burks, Charlie Warner and Robert Turner–the four co-workers were that he claimed were transferred with him–were, what positions they held, when and to what positions they were transferred, and why they were not named on the memo listing the eleven inmates transferred on April 16, 2004. He also made no effort to explain why he stated that these were the only prisoners transferred or to dispute Mr. Tomlinson's averment that the transfers were from across the racial spectrum. Finally, he made no attempt to inform the court which "departments"

were left with only white workers.  As to his cut in pay, his conclusory averments

that he was the only transferee that experienced a pay cut and that "there have

been several OCI Job movements/demotions similar (if not identical) to [his] Job

movement/demotion where fellow inmate workers did not lose their positions nor

their Pay grade Five (5) status during the transfer" are unavailing in the absence

of any detail regarding the identity of these inmates or their respective pre- and

post-transfer positions and pay grades.  It is irrelevant that Mr. Mallard declared

under penalty of perjury that his conclusory allegations were true.[6]  *Lujan v. Nat'l

Wildlife Fed'n*, 497 U.S. 871, 888 (1990) (holding the purpose of Rule 56(e) is to

require plaintiff to "set forth specific facts showing that there is a genuine issue

for trial" not to simply "replace conclusory allegations of the complaint or answer

with conclusory allegations of an affidavit").  Therefore, we agree that

Mr. Mallard did not prove that he was transferred for racial reasons and that, even

if he *had* shown disparate treatment, he had not shown that Mr. Tomlinson's

non-discriminatory reason for the RIF, the large loss of business, was a mere

pretext.

3.  Mr. Tomlinson–Retaliation

As for Mr. Mallard's retaliation claim, it is well established that "[p]rison

officials may not retaliate against or harass an inmate because of the inmate's

---

[6]      Mr. Mallard made it a practice to include a declaration at the end of his
district court filings that the information contained in the filings was true.

exercise of his right of access to the courts." *Green v. Johnson*, 977 F.2d 1383, 1389 (10th Cir. 1992) (quotation omitted). "It is [also] well established that an act in retaliation for the exercise of a constitutionally protected right is actionable under 42 U.S.C. Section 1983 even if the act, when taken for a different reason, would have been proper." *Smith v. Maschner*, 899 F.2d 940, 948 (10th Cir. 1990) (quotations and alterations omitted). In order to prove retaliation, Mr. Mallard had the burden of showing (1) that his filing of a grievance against Mr. Price was a constitutionally protected activity, (2) that his transfer to a lower paying job was an injury that would chill a person of ordinary firmness from engaging in that activity in the future, and (3) that a substantial motivating factor for the transfer was Mr. Tomlinson's desire to retaliate for the filing of the grievance against Mr. Price. *Mimics, Inc. v. Vill. of Angel Fire*, 394 F.3d 836, 847 (10th Cir. 2005).

We find no fault with the argument that an inmate's right to file grievances is clearly protected and a cut in wages of this type is an injury that would chill a person of ordinary firmness' will to file future grievances. However, as correctly held by the district court, Mr. Mallard presented no evidence from which a reasonable juror could have found that the transfer was substantially motivated by retaliation. Although it is true that "proof of an official's retaliatory intent rarely will be supported by direct evidence of such intent," *Poole v. County of Otero*, 271 F.3d 955, 962 (10th Cir. 2001) (quotation omitted) *abrogated on other grounds by Hartman v. Moore*, 126 S. Ct. 1695 (2006), here it is pure supposition

that Mr. Mallard's transfer was substantially motivated by his filing of the grievance in question.

First, the grievance was filed not against Mr. Tomlinson but against Mr. Price, who did not play a role in the transfer. Second, the grievance was sustained in that when Mr. Tomlinson was apparently made aware of the awarding of bonus hours to inmates, he stopped the practice. Third, almost nine months passed between the filing of the grievance and Mr. Mallard's transfer. Fourth, the transfer was part of a RIF that saw a reduction in the workforce of the housing department from 152 to 62, with ten other inmates transferred the same day as Mr. Mallard. In short, Mr. Mallard presents no evidence to tie his grievance to the decision to transfer him.

## CONCLUSION

For the reasons set forth above, the judgment of the district court is AFFIRMED. Mr. Mallard's motion to proceed on appeal without prepayment of costs and fees is GRANTED, and he is reminded that he remains obligated to make partial payments until the entire fee has been paid.

Entered for the Court

Michael W. McConnell
Circuit Judge

-12-