FILED
United States Court of Appeals
Tenth Circuit

January 24, 2018

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

CALVIN JOHNSON,

     Plaintiff - Appellant,

v.

TONYA WHITNEY, (employee I.D. 13341) (sued in both official/personal capacities),

     Defendant - Appellee.

No. 17-1249
(D.C. No. 1:17-CV-01559-LTB)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES**, **McHUGH**, and **MORITZ**, Circuit Judges.
_____

The district court determined that Calvin Johnson's civil rights claims were frivolous and dismissed his pro se complaint under 28 U.S.C. § 1915(e)(2)(B)(i). He appeals the district court's judgment. Exercising jurisdiction under 28 U.S.C. § 1291, we reverse and remand for further proceedings consistent with this order and judgment.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.      Background

Mr. Johnson is a state prisoner in Colorado.  He filed a complaint under 42 U.S.C. § 1983 alleging three claims related to money that was taken from his inmate bank account.  He alleged that, in violation of a Colorado Department of Corrections (CDOC) administrative regulation—and without due process—$3.82 was withheld from his account on November 1, 2016, and another $1.41 was withheld from his account on February 3, 2017.  The CDOC regulation that Mr. Johnson cited, AR-200-15, sets forth procedures for collecting from prisoners' bank accounts certain debts such as court-ordered fines and fees, court filing fees, restitution, child support, and balances owing from disciplinary convictions.  A minimum of 20% of all deposits into a prisoner's account is withheld to pay these outstanding debts.  *See* AR-200-15(IV).  But the regulation also provides that some accounts may be exempt from withholding.  *Id.* AR-200-15(IV)(A)(8).[1]  Mr. Johnson alleged that he is eligible for this exemption because his inmate pay never exceeds the minimum amount of $7.36 per month, he never

------

[1] This exemption provision states:

> If an offender has not had a deposit in the 30 days prior to inmate pay, and if inmate pay is $.32 daily (Grade 1), then the total daily pay of $.32 ($7.36 maximum, per month) may be exempt from withholding.  To meet this exemption, the offender's available account balance which is not being held as reserved or encumbered monies, cannot exceed $10.00 during the 30 days prior to receiving unassigned inmate pay.  Any inmate pay that exceeds $7.36, per month, and any other deposits will be subject to the mandatory withholding of at least 20 percent.

receives money from any other source, and his monthly account balance did not exceed $10.00.

Mr. Johnson named one defendant, Tonya Whitney, whom he identified as a supervisor in the Inmate Banking Office. Claim One alleged that, in responding to his step-two grievance regarding the withholding of $3.82 from his account, Ms. Whitney refused to return the funds. Claim Three alleged that Ms. Whitney falsely interpreted AR-200-15 by adding two months of his inmate pay together, bringing his balance above $10.00 and making him ineligible for the exemption from withholding. As a result, an additional $1.41 was withheld from his account. Mr. Johnson alleged that the CDOC regulation had not previously been interpreted in this manner. Claim Two alleged that Ms. Whitney applied her false interpretation of AR-200-15 after reviewing and in retaliation for Mr. Johnson's grievance regarding the previous withholding of $3.82. In that earlier grievance, he had maintained that, if the funds were credited to his account, they should not be added to his inmate pay for the current month to bring his account balance above $10.00 and take away his exemption from withholding. Mr. Johnson sought actual and punitive damages and an injunction preventing AR-200-15 from being changed or misinterpreted.

On screening, the district court dismissed Mr. Johnson's complaint as frivolous under § 1915(e)(2)(B)(i). Addressing Claims One and Three, which the court construed as alleging procedural-due-process violations, it first considered whether Mr. Johnson had a property interest in his prison bank account that had been interfered with by the state. Citing *Cosco v. Uphoff*, in which we held that the question is "whether the prison

3

condition complained of presents the type of atypical, significant deprivation in which a State might conceivably create a liberty or property interest," 195 F.3d 1221, 1224 (10th Cir. 1999) (brackets and internal quotation marks omitted), the district court held it was "not persuaded that withholding a percentage of the inmate pay deposited into Mr. Johnson's inmate account to pay fees including court filing fees rises to the level of an atypical and significant hardship in relation to the ordinary incidents of prison life," R. at 22.

The district court continued its analysis, stating that even if the alleged facts implicated a protected property interest, Mr. Johnson's due-process claims still lacked merit because he alleged random and unauthorized acts in violation of a prison policy, but he failed to plead that his state post-deprivation remedy is inadequate. The court held that the CDOC grievance procedure, which defines "remedy" to include restoration of property, provides a meaningful remedy for Mr. Johnson's claims even if he did not obtain the relief he sought. In addition, the court held that he also failed to plead that he lacked an adequate remedy in state court.

Turning to Mr. Johnson's retaliation claim, the court noted that prison officials cannot retaliate against an inmate for exercising his constitutional rights. But it concluded that Mr. Johnson's claim failed because he did not plead that the defendant's actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in a constitutionally protected activity. *See Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010). The district court held that, considered

4

objectively, withholding $1.41 from the inmate pay deposited in Mr. Johnson's account was not sufficiently chilling.

The district court dismissed Mr. Johnson's complaint with prejudice. It did not grant him leave to amend or determine that amendment would be futile.

## II. Discussion

"We generally review a district court's dismissal for frivolousness under § 1915 for abuse of discretion. However, where the frivolousness determination turns on an issue of law, we review the determination *de novo*." *Fogle v. Pierson*, 435 F.3d 1252, 1259 (10th Cir. 2006) (citation omitted). "A district court may deem an in forma pauperis complaint frivolous only if it lacks an arguable basis either in law or in fact." *Id.* (internal quotation marks omitted). "In other words, dismissal is only appropriate for a claim based on an indisputably meritless legal theory and the frivolousness determination cannot serve as a factfinding process for the resolution of disputed facts." *Id.* (internal quotation marks omitted). Because Mr. Johnson proceeds pro se, we liberally construe his complaint and his appellate brief. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

### A. Due-Process Claims

In dismissing Mr. Johnson's due-process claims, the district court based its frivolousness determination on two grounds: (1) failure to plead an atypical and significant hardship in relation to the ordinary incidents of prison life, and (2) failure to plead that his state post-deprivation remedy is inadequate. We hold that the district court erred by dismissing Mr. Johnson's claims on the first ground and by dismissing his

5

claims on the second ground without considering whether it would be futile for him to amend his complaint.

### 1. Failure to Plead a Protected Property Interest

This court applies the Supreme Court's analysis in *Sandin v. Connor*, 515 U.S. 472 (1995), to determine whether a prisoner has a property interest giving rise to a right to due process. *See Cosco*, 195 F.3d at 1223-24. In *Sandin*, 515 U.S. at 480-84, the Court rejected its previous practice of discerning liberty interests based on mandatory language in prison regulations. Instead, the Court "recognize[d] that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 483-84 (citations omitted).

The Supreme Court held that the loss of liberty at issue in *Sandin*—30 days in disciplinary segregation—did not "present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." *Id.* at 486. The Court considered the evidence as to what was atypical and significant in the prisoner's environment, comparing the conditions in disciplinary segregation to those in administrative segregation and protective custody and concluding there were no significant differences in duration or degree of restriction. *Id.* The Court noted further that the conditions at the prison in question involved significant amounts of lockdown

6

time even for inmates in the general population. Thus, "[b]ased on a comparison between inmates inside and outside disciplinary segregation, the State's actions in placing him there for 30 days did not work a major disruption in his environment." *Id.*

This court has extended the *Sandin* analysis to due-process claims based on *property* interests, but we have little case law applying *Sandin* in this context. In *Cosco*, we held that a prison regulation regarding the type and quantity of personal property that prisoners could keep in their cells was "typical of the kinds of prison conditions that the Court has declared to be subject to the [*Sandin*] analysis." 195 F.3d at 1224. We concluded that new regulations limiting the property permitted in cells did not present an atypical and significant deprivation of the prisoners' existing privileges in which the state might create a property interest. *Id.* at 1222, 1224.

We have also affirmed grants of qualified immunity in two cases involving prisoners' property-interest due-process claims. In *Steffey v. Orman*, 461 F.3d 1218, 1220-21 (10th Cir. 2006), we held that a prisoner had no protected property right in receiving a contraband money order in violation of prison policy. We based our conclusion on case law demonstrating that the seizure and forfeiture of contraband is "a typical incident of prison life, and is not a significant property interest deprivation." *Id.* at 1223. We therefore affirmed summary judgment based on qualified immunity because there was no constitutional violation. *Id.* at 1223. We took a different tack in *Clark v. Wilson*, 625 F.3d 686, 691 (10th Cir. 2010), which raised the issue "whether freezing a prison account in response to a garnishment summons imposes an atypical and significant hardship on an inmate in relation to the ordinary incidents of prison life." Noting that we

7

had not previously addressed that question, we declined to decide it in *Clark*; instead, we affirmed summary judgment based on qualified immunity holding there was a lack of clearly established law. *Id.* at 691-92.

Here, the district court held that Mr. Johnson's due-process claims were frivolous because withholding a percentage of his inmate wages to repay certain debts does not rise to the level of an atypical and significant hardship in relation to the ordinary incidents of prison life. We take no issue with that conclusion. Under AR-200-15, this is, in fact, an ordinary incident of prison life for CDOC prisoners. A federal statute similarly requires prisoners to make monthly payments equal to 20% of their income toward the payment of filing fees incurred in civil cases in federal court. *See* 28 U.S.C. § 1915(b)(2).

But in reaching its holding, the district court appears to have misconstrued Mr. Johnson's due-process claims. He did not broadly challenge the application of AR-200-15. He challenged only the withholding of a percentage of his inmate pay—which is equal to a maximum of $7.36 per month—when he has no other source of income and his account balance is less than $10.00. We note that the CDOC regulation and § 1915 both exempt account balances under $10.00 from withholding under certain circumstances. *See* § 1915(b)(2); AR-200-15(IV)(A)(8). We read Mr. Johnson's claims to assert that the alleged deprivation is both atypical in his prison environment and significant in the context of the minimal pay he receives each month. We hold that the district court abused its discretion in concluding that there was no *arguable* basis for Mr. Johnson's claim of a protected property interest. *See Fogle v. Pierson*, 435 F.3d 1252, 1259 (10th Cir. 2006) (noting, in reversing a frivolousness determination, the

8

importance of "carefully examining the conditions of the prisoner's confinement" (brackets and internal quotation marks omitted)).

### 2. Failure to Plead an Inadequate State Post-Deprivation Remedy

The district court held, alternatively, that Mr. Johnson's due-process claims were frivolous because he failed to plead that his state post-deprivation remedy was inadequate. "[A]n unauthorized intentional deprivation of property by a state employee does not constitute a [due-process] violation . . . if a meaningful postdeprivation remedy for the loss is available," and "the state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Under *Hudson*, a prisoner's complaint must allege facts sufficient to show the lack of an adequate state remedy. *Durre v. Dempsey*, 869 F.2d 543, 548 (10th Cir. 1989) (per curiam).

Mr. Johnson appears to argue that this element is not applicable to his due-process claims because the constitutional violations he alleged were not random. We disagree. *Hudson* held that a post-deprivation remedy does not satisfy due process "where the property deprivation is effected pursuant to an established state procedure." 468 U.S. at 534. Mr. Johnson alleged in his complaint that his inmate pay was withheld in violation of, rather than according to, established procedure. Therefore, he must plead facts showing that his state remedy was inadequate. He did not do so. Noting this deficiency, the district court went on to hold that his due-process claims were frivolous because his available state remedies, via a prison grievance and a state-court action, were adequate as

9

a matter of law. But our case law makes clear that a state-court action in Colorado may be, but is not *necessarily*, an adequate post-deprivation remedy.

In *Durre*, we held that a prisoner failed to allege an inadequate state remedy. 869 F.2d at 547-48. In particular, Colorado has waived sovereign immunity for damages claims resulting from the operation of a correctional facility. *Id.* at 547; *see also* Colo. Rev. Stat. § 24-10-106(1)(b). The prisoner claimed that remedy was inadequate, but we rejected his conclusory allegations of indigency, lack of counsel, and confinement. *Durre*, 869 F.2d at 547. Rather, we found that the prisoner could petition the state court for a waiver of costs and expenses; he could proceed pro se, submit pleadings, and conduct discovery by mail, and present testimony by deposition; and he did not allege any attempt to retain counsel, nor is there a constitutional right to appointed counsel in a civil case. *Id.*

In contrast, we recognized in *Freeman v. Department of Corrections*, that the existence of a state-court remedy does not preclude a prisoner from pleading that the remedy is nonetheless inadequate. 949 F.2d 360, 362 (10th Cir. 1991) ("The fact that Colorado law permits a suit against a state correctional facility may create a presumption of adequate due process and may stave off a facial attack, but it is not conclusive." (citation omitted)). The inmate in *Freeman* alleged that prison officials confiscated his stereo and refused to return it; he filed grievances to no avail; he then filed a small claims action and asked for a default judgment, but he received no response despite repeatedly writing to the state court regarding the status of his case; and finally, prison officials induced him to dismiss his small claims action by saying they would return his stereo, but

10

they never did. *Id.* at 361. We held that, in contrast to *Durre*, the prisoner "alleged specific facts showing that the state procedure has been unresponsive and inadequate," and we concluded that "[i]f in fact the state remedy was constitutionally insufficient, the appellant may have a cause of action under section 1983 for the confiscation of his property." *Id.* at 362.[2]

The district court neither granted Mr. Johnson leave to amend his complaint nor considered whether the defects in it could be cured by amendment. *Cf. Gee v. Pacheco*, 627 F.3d 1178, 1182, 1195 (10th Cir. 2010) ("[D]ismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." (internal quotation marks omitted)). In light of *Freeman*, this was an abuse of discretion. We therefore reverse the district court's dismissal of Mr. Johnson's due-process claims and direct the court to consider futility of amendment in the first instance on remand. If amendment would not be futile, the court should give Mr. Johnson an opportunity to amend his complaint to include facts showing that his state remedy is inadequate.[3]

---

[2] The district court also held that the CDOC prison grievance process provided Mr. Johnson an adequate state remedy as a matter of law. But we held in *Freeman* that the prisoner sufficiently pled an inadequate state remedy even though he had initially pursued a grievance. 949 F.2d at 361. In any event, our reasoning in *Freeman*—that a remedy may be, but is not necessarily adequate—applies as well to the grievance process available to Mr. Johnson.

[3] To the extent there may be other shortcomings in Mr. Johnson's due-process allegations that could be remedied by amendment, we trust that the district court "will explain the pleading's deficiencies so that a prisoner with a meritorious claim can then submit an adequate complaint." *Gee*, 627 F.3d at 1186. Under our case

(continued)

11

## B. Retaliation Claim

Mr. Johnson alleged that Ms. Whitney withheld the additional $1.41 from his inmate pay in retaliation for his filing a grievance challenging the earlier withholding of $3.82. "It is well-settled that prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right of access to the courts." *Gee*, 627 F.3d at 1189 (brackets and internal quotation marks omitted). The elements of a retaliation claim are: (1) the plaintiff engaged in constitutionally protected activity; (2) the defendant responded by causing an injury that "would chill a person of ordinary firmness from continuing to engage in that activity," and (3) the defendant's action was substantially motivated as a response to the plaintiff's protected activity. *Id.* (internal quotation marks omitted). Mr. Johnson's filing of a grievance qualifies as protected activity under the first element. *See id.* The district court dismissed his retaliation claim as frivolous, holding that the injury he alleged—withholding of $1.41 from his inmate pay—did not satisfy the second element because it would not chill a person of ordinary firmness from engaging in constitutionally protected activity.

---

law, for example, Mr. Johnson cannot allege a defendant's personal involvement based solely on her role as a supervisor or on her denial of a grievance, by itself. *See Cox v. Glanz*, 800 F.3d 1231, 1248 & n.9 (10th Cir. 2015); *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009).

Whether an injury is sufficient to chill the exercise of a protected right is an objective inquiry. Thus, the question is not whether the injury has, in fact, dissuaded Mr. Johnson from pursuing a grievance. *See Smith v. Plati*, 258 F.3d 1167, 1177 (10th Cir. 2001).

> Because it would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity, . . . the proper inquiry asks whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities.

*Id.* (internal quotation marks omitted). A trivial or de minimus injury, however, is not sufficient to support a retaliation claim. *Eaton v. Meneley*, 379 F.3d 949, 954-55 (10th Cir. 2004).

Mr. Johnson contends that he alleged a sufficiently chilling injury. He asserts that he needs to use his small income—a maximum of $7.36 per month—to purchase necessities such as additional food and clothing, neither of which, he claims, is sufficiently provided by the prison. Aplt. Opening Br. at 3 (stating that "in practical application you need more than what the prison staff provide"). Mr. Johnson maintains that taking 20% or more of his limited income is therefore significant, and that small amounts can add up to a lot if the prison regulation exempting his account from withholding is violated over and over.

When considered in the context of prison and the wages that inmates earn, we are not convinced that Mr. Johnson's alleged injury is, as a matter of law, not sufficiently chilling to dissuade a person of ordinary firmness from pursuing a grievance. Although not controlling, we are persuaded by our holding in an unpublished decision, *Mallard v.*

13

*Tomlinson*, 206 F. App'x 732 (10th Cir. 2006). In *Mallard*, a prisoner alleged that, in retaliation for filing an administrative grievance, he was transferred to a different prison job, resulting in a wage reduction of ten cents per hour. *Id.* at 735. We held that "a cut in wages of this type is an injury that would chill a person of ordinary firmness' will to file future grievances." *Id.* at 737. Thus, while a $1.41 loss would likely be de minimus in other contexts, it is not trivial when considered in a prison setting.

Mr. Johnson also must plead that Ms. Whitney's action was substantially motivated as a response to his protected activity. He alleged Ms. Whitney had reviewed his grievance regarding the withholding of $3.82, which gave her the idea to purposely misinterpret the CDOC regulation to take away his exemption from withholding. Mr. Johnson alleged that his previous grievance stated that, if the $3.82 was returned to his account, it should not be added to his inmate pay for the current month to bring his account balance above $10.00. We conclude that Mr. Johnson has pled sufficient facts to connect Ms. Whitney's alleged retaliation to his filing of the previous grievance. "The allegations may be improbable, but they are not implausible." *Gee*, 627 F.3d at 1189. We reverse the district court's dismissal of Mr. Johnson's retaliation claim.

## III.    Conclusion

The district court's judgment is reversed and this case is remanded for further consideration consistent with this order and judgment. Mr. Johnson's "Motion for the Court to Issue Order of Preliminary Injunction for the Things Listed Below" is denied.

14

Mr. Johnson's motion to proceed on appeal without prepayment of fees and costs is granted.

Entered for the Court

Jerome A. Holmes
Circuit Judge