**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 20, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

MICHAEL KECK,

   Plaintiff-Appellant,

v.

CARL ZENON; STEVEN HARTLEY;
and EUGENE GONZALES,

   Defendants-Appellees.

No. 07-1100
(D.C. No. 06-cv-02564-ZLW)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **HARTZ**, and **GORSUCH**, Circuit Judges.

Michael Keck, currently in custody at a Colorado correctional facility, appeals the district court's dismissal of his *pro se* complaint under 42 U.S.C. § 1983 and 28 U.S.C. § 1343, seeking money damages as well as declaratory and injunctive relief. Mr. Keck claims his classification to administrative segregation was effected in violation of his constitutional rights to due process and equal protection of the laws. The district court, for its part, found Mr. Keck's claims

---

[*] After examining appellant's brief and the appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

frivolous, assessed him a strike under 28 U.S.C. § 1915(e)(2)(B), and denied Mr.

Keck leave to proceed *in forma pauperis* on appeal pursuant to 28 U.S.C.

§ 1915(a)(3) and Rule 24 of the Federal Rules of Appellate Procedure. Even

viewing Mr. Keck's complaint liberally, as we are obliged to do, *Andrews v.

Heaton*, 483 F.3d 1070, 1076 (10th Cir. 2007), we determine that the judgment of

the district court should be affirmed.

＊　＊　＊

Mr. Keck's troubles at Arkansas Valley Correctional Facility began July 1,

2004, when he was assigned to administrative segregation following a

disciplinary proceeding in which he was found guilty of assault. *See* Appellant's

Br. 17; Ex. 1 to Pl.'s Compl. A month later, Mr. Keck appealed his continued

segregated confinement in light of his asserted good behavior, Ex. 1 to Pl.'s

Compl., and was granted reprieve by Associate Warden Steven Hartley who

authorized his release back into the general prison population on August 30, 2004,

Ex. 2 to Pl.'s Compl.

Within just a few weeks of his release into the general population, however,

Mr. Keck was again the subject of disciplinary proceedings on September 24,

2004, this time for possession or use of drugs. Ex. 4 to Pl.'s Compl. Following a

hearing, Mr. Keck was found guilty and subject to, among other things, 20 days of punitive segregation. *Id.*[1]

Mr. Keck remained segregated past the expiration of 20 days and sought relief through processes afforded by the CDOC. Specifically, Mr. Keck filed a grievance with the CDOC on October 23, 2004, asserting that he satisfied his mandatory punitive segregation and that if his continued segregation was a result of being classified to administrative segregation, the CDOC effected this change in status in contravention of its own regulations which afford inmates notice and a hearing. Ex. 11 to Pl.'s Compl.

The CDOC responded that his administrative segregation status effected around July 1, 2004 had never been altered; that he had been afforded all process due in accordance with its regulations through the hearing held on July 1, 2004; and that his brief release into the general population on August 30, 2004, was "inadvertent[]" and due to a non-final recommendation that was subsequently denied by a superior review authority (Offender Services). *See* Ex. 11 to Pl.'s

---

[1] Colorado Department of Corrections ("CDOC") regulations distinguish between "administrative segregation" and "punitive segregation." CDOC Administrative Regulation 600-02 (II) (eff. Apr. 15, 2004). Although the former is "[t]he most restrictive custody level imposed upon an offender . . . [and] will be utilized only after a specific classification hearing has determined this custody level is required," it is not punitive and is rather a "preventive and management assignment process." *Id.* at II, III(A). By contrast, "punitive segregation" is "[a] disciplinary sanction that may be imposed only after a specific disciplinary hearing has taken place." *Id.* at III(I).

Compl.; *see also* Ex. 6 to Pl.'s Compl. (memorandum from Associate Warden Hartley to Mr. Keck, dated Jan. 6, 2006, explaining the same).[2]

∗   ∗   ∗

The gravamen of Mr. Keck's appeal is the CDOC's alleged failure to provide Mr. Keck with due process when it purportedly reclassified him to administrative segregation on September 24, 2004. The district court dismissed Mr. Keck's claim as frivolous because he failed to allege facts giving rise to a cognizable liberty interest. Mr. Keck also raised an equal protection claim, which the district court dismissed on the grounds that Mr. Keck could not and did not identify any similarly situated person who was treated differently.[3]

We review a district court's dismissal for frivolousness under Section 1915 for abuse of discretion, though where and to the extent the determination turns on a question of law, we review the district court's decision *de novo*. *Fogle v. Pierson*, 435 F.3d 1252, 1259 (10th Cir. 2006). Dismissal on frivolousness

---

[2] On February 11, 2005, Mr. Keck was transferred from Arkansas Valley Correctional facility, a medium security facility, to the Colorado State Penitentiary ("CSP"), a high security facility. Mr. Keck's situation appears to have steadily deteriorated upon his arrival at the CSP. An administrative segregation classification review contained in the record notes his "continued . . . inappropriate behavior" upon arriving at the CSP in 2005 and details over seven specific instances of such behavior in a year's time. Ex. 15 to Pl.'s Compl.

[3] Mr. Keck also raised before the district court a purported violation of his Eighth Amendment right to be free from cruel and unusual punishment. Mr. Keck has not appealed the district court's conclusion that he failed to identify a specific deprivation of a human need recognized under the Eighth Amendment.

grounds is appropriate when the claim at issue "lacks an arguable basis either in law or fact" or, in other words, is "based on an indisputably meritless legal theory." *Id.* (quotations and citations omitted).

1.      Beginning with Mr. Keck's due process claim, we agree with the district court that Mr. Keck has not presented a constitutionally protected liberty interest.  Mr. Keck appears to assert that the CDOC's regulation governing the assignment of inmates to administrative segregation itself created a protected liberty interest to remain in the general prison population.  Ordinarily, however, changing an inmate's status or classification "does not deprive him of liberty, because he is not entitled to a particular degree of liberty in prison." *Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994); *see also Meachum v. Fano*, 427 U.S. 215, 225 (1976).  And, more specifically, we long ago rejected Mr. Keck's very argument with reference to CDOC's regulatory regime. *See Templeman*, 16 F.3d at 369.

More recently, the Supreme Court has explained that the examination Mr. Keck asks us to undertake – namely, determining whether prison guidelines "used 'language of an unmistakably mandatory character' such that the incursion on liberty would not occur 'absent specific substantive predicates'" – is itself no longer an appropriate method for ascertaining the existence of a liberty interest. *Sandin v. Conner*, 515 U.S. 472, 480 (1995) (quoting *Hewitt v. Helms*, 459 U.S. 460, 471-72 (1983)).  Rather, we must look to the conditions of confinement,

asking whether they impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484; *see also Wilkinson v. Austin*, 545 U.S. 209, 221-23 (2005); *Estate of DiMarco v. Wyoming Dep't of Corr., Div. of Prisons*, 473 F.3d 1334, 1339-40 (10th Cir. 2007); *Fogle*, 435 F.3d at 1259. Thus, for example, in *Fogle* we found the prisoner's allegations – that for a three-year period he was "confined to his cell for all but five hours each week and denied access to any outdoor recreation" – were not frivolous and arguably implicated procedural due process concerns. *Fogle*, 435 F.3d at 1259. Analyzing Mr. Keck's case under this standard, however, we are still unable to discern the basis for a claim. Mr. Keck has not argued that the prison conditions he endures impose an "atypical and significant hardship," and the record he presents is devoid of facts regarding the nature of his current detention that would be sufficient to suggest the sort of extreme situation presented in *Fogle* and other cases in which courts have found *Sandin's* test met.[4]

2.    Even were we to assume that Mr. Keck had a constitutionally protected liberty interest in his classification, his due process argument would nevertheless fail. Mr. Keck's sole procedural complaint is that the CDOC failed to follow its own regulations, but the record before us suggests otherwise.

---

[4] Mr. Keck's similar assertion that he has a protected liberty interest in avoiding the loss of the opportunity to earn "good time credits" while in administrative segregation is also foreclosed by our precedent. *See Templeman*, 16 F.3d at 370; *see also Fogle*, 435 F.3d at 1262.

It is undisputed that Mr. Keck was afforded an administrative segregation hearing, in compliance with CDOC regulations, on July 1, 2004. Mr. Keck does not assert that this hearing, and the processes employed by the CDOC generally, failed to provide him with due process prior to being classified to administrative segregation. Rather, he claims that the purported reassignment by Associate Warden Hartley, as the "administrative head," nullified the effect of the July 1, 2004 hearing. By its own terms, however, the very document to which Mr. Keck points as proof did no such thing. Instead of reversing the status decision, Associate Warden Hartley plainly indicated that he had "modified" the initial status decision by noting that Mr. Keck's status "will be *reviewed . . .* for placement to level IV." Ex. 1 to Pl.'s Compl. (emphasis added). In accordance with this modification, the classification committee responsible for recommending inmate placement to administrative segregation conducted a review of Mr. Keck's placement on August 25, 2004 and suggested that Mr. Keck not be retained in administrative segregation. Ex. 2 to Pl.'s Compl. Associate Warden Hartley concurred with the classification committee's suggestion on August 30, 2004. *Id.*

Mr. Keck argues that, under the CDOC regulation, Associate Warden Hartley's concurrence was "final" and the CDOC's assertions to the contrary are *post-hoc* fabrications. While the regulations do in fact provide that Associate Warden Hartley's decision, as the acting administrative head, on Mr. Keck's appeal of the classification committee's decision to *assign* him to administrative

-7-

segregation is final, *see* CDOC Regulation 600-02(IV)(N), a wholly separate provision (and review process) applies to any *subsequent review* conducted by Associate Warden Hartley of a classification committee recommendation occurring after the inmate's initial classification has been made, *see* CDOC Regulation 600-02(IV)(P).

It is this latter regulatory provision and process that is applicable to Associate Warden Hartley's approval on August 30, 2004, of the committee's recommendation that Mr. Keck not be retained in administrative segregation. This is so because the committee's decision that Associate Warden Hartley approved was not the committee's initial classification decision; rather, it was the committee's recommendation based on one of many subsequent reviews of Mr. Keck's continued segregated confinement in accordance with CDOC regulations. The applicable regulation explicitly provides that the administrative head's decision upon review of such an interim recommendation is not final; rather, if the administrative head concurs with the committee's finding, as Associate Warden Hartley did here, "the findings shall be forwarded to the Offender Management manager," and "*[i]f* approved by the Offender Management manager," the inmate will be reclassified. CDOC Regulation 600-02(IV)(P)(3-4) (emphasis added). The CDOC's response to Mr. Keck's grievances then – that although Associate Warden Hartley approved of the committee's recommendation to take Mr. Keck off of administrative segregation status, his approval was in

-8-

effect overruled by Offender Services – is entirely consistent with, not contrary to, the process provided by its own regulations.

3.    In addition to his due process claim, Mr. Keck asserts that he was denied equal protection of the laws stemming from his purported reassignment to administrative segregation following the September 24, 2004 disciplinary proceeding during which he was found guilty of use or possession of drugs. Specifically, Mr. Keck claims that his compatriots to this infraction were not similarly treated because they were not directed to administrative segregation. But Mr. Keck fails to offer any facts suggesting that any of these inmates were similarly situated, offering no basis to believe that the other inmates he identifies had a similar disciplinary history, let alone that they had already been classified to administrative segregation. On this basis, we cannot find error in the district court's dismissal of Mr. Keck's claim. *See Templeman*, 16 F.3d at 371 (holding that defendant could not identify a similarly situated inmate not subject to administrative segregation because classification decisions are discretionary and the CDOC takes a multitude of factors into account in making such a decision); *see also Fogle*, 435 F.3d at 1261 (same).

✳    ✳    ✳

For the foregoing reasons, we affirm the district court's dismissal of Mr. Keck's action pursuant to 28 U.S.C. § 1915(e)(2)(B)(i), and, like the district

court, we deny Mr. Keck's motion for leave to proceed *in forma pauperis*.

ENTERED FOR THE COURT


Neil M. Gorsuch
Circuit Judge