FILED
United States Court of Appeals
Tenth Circuit

May 13, 2008

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

MAGIN RAUL PADILLA,

     Plaintiff - Appellant,

v.

JUDGE ENZOR, District Court 17th
Judicial District, Adams County
Justice Center; DON QUICK, D.A.,
AND COMPLETE STAFF, Office of
Colorado District Attorney 17th
Judicial District, MICHAEL BRASS,
D.A.; ROBERT S. GRANT, D.A.;
COLORADO DEPARTMENT OF
CORRECTIONS; GOVERNOR BILL
RITTER; JOHN SUTHERS, Colorado
Attorney General, People of the State
of Colorado; MR. WILSON, Colorado
State Office of Public Defenders;
PAUL CRANE, Colorado State Office
of Public Defenders; JEANEEN
MILLER, Colorado Division of Adult
Parole and Community Corrections;
ALLEN STANLEY, Colorado State
Board of Parole; SGT. NORA
KURTZ, Arkansas Valley Correctional
Facility Mailroom; WARDEN LOU
ARCHELETTA, Arkansas Valley
Correctional Facility; CHRISTINE
MOSCHETTI, Colorado Department
of Corrections Time Comp; DONA
THURLOW, Colorado Department of
Corrections Time Comp; LT.
STEINBECK, Arkansas Valley
Correctional Facility Mailroom;

No. 07-1335
(D.C. No. 1:07-CV-00537-ZLW)
(D. Colo.)

VALUE ADDED
COMMUNICATIONS; ZERO PLUS
DIALING, INC., LONG DISTANCE,
PLANO, TEXAS, and JOHN AND
JANE DOES,

       Defendants-Appellees.

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE**, **EBEL**, and **McCONNELL**, Circuit Judges.

---

Plaintiff-Appellant Magin Raul Padilla, proceeding pro se and in forma pauperis, appeals the district court's decision to dismiss his claims asserted under 42 U.S.C. § 1983.[1]  We AFFIRM.

---

[*]After examining appellant's brief and the appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.  See Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1]We GRANT Padilla's motion to proceed on appeal in forma pauperis.  See 28 U.S.C. § 1915.

## I. Background

Padilla is incarcerated by the Colorado Department of Corrections ("DOC") as a result of his 2003 Colorado conviction for "theft by receiving" stolen property. See Colo. Rev. Stat. § 18-4-410. For this conviction, Padilla was subject to "a term of two years to six years at the Department of Corrections plus three years parole and/or a fine of $2,000 to $500,000."

Padilla commenced this action pursuant to 42 U.S.C. § 1983. "Section 1983 provides that '[e]very person' who acts under color of state law to deprive another of constitutional rights 'shall be liable to the party injured in an action at law.'" Robertson v. Las Animas County Sheriff's Dep't, 500 F.3d 1185, 1191 (10th Cir. 2007) (quoting 42 U.S.C. § 1983). Among other remedies, "[d]amages are available [under] § 1983 'to compensate persons for injuries caused by the deprivation of constitutional rights.'" Makin v. Colo. Dep't of Corr., 183 F.3d 1205, 1214 (10th Cir. 1999) (quoting Carey v. Piphus, 435 U.S. 247, 254 (1978)).

In this case, the district court dismissed most of Padilla's § 1983 claims as frivolous under 28 U.S.C. § 1915(e)(2)(B)(i), and dismissed others simply "without prejudice." Padilla appeals those decisions.

## II. Appellate jurisdiction

At the outset, we must determine whether we have jurisdiction to consider this appeal. 28 U.S.C. § 1291 gives this court jurisdiction to consider appeals taken from a district court's final decisions, which are those that end the litigation

3

on the merits and leave nothing for the court to do but execute the judgment, see Alexander v. U.S. Parole Comm'n, 514 F.3d 1083, 1087 (10th Cir. 2008) (citing Catlin v. United States, 324 U.S. 229 (1945)).  But a district court's decision to dismiss claims without prejudice may signal, instead, that the district court's decision is not yet final.  See Moya v. Schollenbarger, 465 F.3d 444, 448 (10th Cir. 2006).  "[I]n this circuit, whether [such] an order of dismissal is appealable generally depends on whether the district court dismissed the complaint or the action.  A dismissal of the complaint is ordinarily a non-final, nonappealable order (since amendment would generally be available), while a dismissal of the entire action is ordinarily final."  Id. 448-49 (quotation omitted).  "In evaluating finality, . . . we look to the substance and objective intent of the district court's order, not just its terminology."  Id. at 449.  And we apply a practical approach.  See id. at 449-50.

Here, the district court's decision at issue does not expressly state whether the court was dismissing only Padilla's complaint or instead his entire action.  In such a situation, "we look to the language of the district court's order, the legal basis of the district court's decision, and the circumstances attending dismissal to determine the district court's intent in issuing its order—dismissal of the complaint alone or actual dismissal of plaintiff's entire action."  Id. at 451.  "If the effect of the district court order is that the plaintiff is effectively excluded from federal court, then the district court must have intended to dismiss the entire

4

action and our appellate jurisdiction is proper." Id. (citations, quotations omitted).

"Although there is no easy resolution to the question of finality in the face of [the district court's] ambiguity," we conclude that it was the district court's intent here to dismiss Padilla's entire action. Id. at 454. In particular, the district court did not extend to Padilla "a sufficiently clear invitation . . . to amend the complaint or otherwise continue the proceedings in the district court." Id. (quotation omitted). And the district court's dismissal of the rest of Padilla's claims as frivolous further suggests that the court intended to dismiss the entire action. In light of that intent, the district court's decision dismissing Padilla's claims, some specifically without prejudice, was a final order and this court, therefore, has appellate jurisdiction to consider this appeal.

### III. Standard of review

The district court permitted Padilla to commence this action in forma pauperis. See 28 U.S.C. § 1915(a). Before the complaint was ever served, however, the district court dismissed all but one of Padilla' s claims as frivolous under 28 U.S.C. § 1915(e)(2)(B)(i), which provides that "the court shall dismiss the case at any point in time if the court determines that . . . the action or appeal . . . is frivolous or malicious."[2] "A district court may deem an in forma

_____

[2]28 U.S.C. § 1915(e)(2) permits a district court to dismiss sua sponte the action of a plaintiff proceeding in forma pauperis under several different

(continued...)

5

pauperis complaint frivolous only if it lacks an arguable basis either in law or in fact." Fogle v. Pierson, 435 F.3d 1252, 1259 (10th Cir.) (quotation omitted), cert. denied, 127 S. Ct. 675 (2006). "[D]ismissal is only appropriate for a claim based on an indisputably meritless legal theory and the frivolousness determination cannot serve as a factfinding process for the resolution of disputed facts." Id. (quotation omitted).

This court generally reviews the district court's decision to dismiss claims as frivolous under § 1915(e)(2)(B)(i) for an abuse of discretion. See Conkle v. Potter, 352 F.3d 1333, 1335 n. 4 (10th Cir. 2003). If the dismissal turns on a question of law, however, we will review that determination de novo. See Fogle,

_____

[2](...continued)
circumstances:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that —
>
> > (A) the allegation of poverty is untrue; or
>
> > (B) the action or appeal —
>
> > > (i) is frivolous or malicious;
> > >
> > > (ii) fails to state a claim on which relief may be granted; or
> > >
> > > (iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2).

435 F.3d at 1259. "In determining whether dismissal is proper, we accept the allegations in the complaint as true and construe those allegations and any reasonable inferences therefrom in the light most favorable to Plaintiff." French v. Adams County Det. Ctr., 379 F.3d 1158, 1159 (10th Cir. 2004). Further, because Padilla is appearing pro se, we will liberally construe his pleadings. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

Although the district court dismissed most of Padilla's claims as frivolous, the court specifically dismissed Padilla's claim "regarding his denial of earned-time credit against his presentence confinement time" without prejudice. The court did not base that dismissal on the claim's frivolousness. We will review that dismissal de novo. See Trujillo v. Williams, 465 F.3d 1210, 1214, 1216 (10th Cir. 2006) (dismissal without prejudice under Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1915(e)(2)); Patel v. Fleming, 415 F.3d 1105, 1108-09 (10th Cir. 2005) (reviewing dismissal for failure to exhaust administrative remedies de novo).

## IV. Padilla's § 1983 claims

Padilla asserted numerous claims under 42 U.S.C. § 1983. These claims generally fall into four categories: claims challenging the legality of Padilla's sentence imposed for his Colorado theft conviction, challenging the execution of that sentence, alleging various defendants deprived Padilla of constitutional rights

7

in their efforts to convict and imprison Padilla, and challenging the conditions of his confinement. We address each category in turn.

## A. Padilla's claims challenging his state conviction and sentence

Liberally construing Padilla's pleadings, several of his allegations challenge his Colorado theft conviction and the sentence imposed for that conviction. For example, Padilla alleges that: (1) by sentencing Padilla to both prison time and a mandatory parole term, his sentence illegally punishes him twice for the same offense; (2) his sentence exceeds "the maximum of the presumtive [sic] [sentencing] range" applicable to this conviction; (3) imposing a mandatory parole term violated Apprendi v. New Jersey, 530 U.S. 466, 490 (2000) (holding that, "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt"); Blakely v. Washington, 542 U.S. 296, 301, 303-05 (2004) (applying Apprendi to overturn Washington's sentencing scheme); United States v. Booker, 543 U.S. 220, 226-27 (2005) (relying upon Apprendi and Blakely to overturn the mandatory application of the United States Sentencing Guidelines); Cunningham, and Barton;[3] 4) the state trial court and the Government breached the plea agreement the Government had with Padilla which, according to him, called for "6 yrs DOC not 9 yrs with 3

---

[3]It is not clear to what cases Padilla is referring when he mentions Cunningham and Barton.

yrs of mandatory parole;" and 5) Padilla's plea agreement was the result of the ineffective assistance provided by his defense attorneys.  Because of these alleged constitutional violations, Padilla argues that "he is entitled now to be immediately released (on mandatory parole where required) and or discharged from prison."

These allegations challenge the fact and duration of his confinement, as well as the legality of both his conviction and sentence.  As such, Padilla cannot assert these claims under 42 U.S.C. § 1983.  See Wilkinson v. Dotson, 544 U.S. 74, 78 (2005) (citing Preiser v. Rodriguez, 411 U.S. 475, 489 (1973)).  Instead, Padilla must assert them in a habeas petition pursuant to 28 U.S.C. § 2254.  See Wilkinson, 544 U.S. at 78; see also Davis v. Roberts, 425 F.3d 830, 845 (10th Cir. 2005).

Ordinarily, a federal court, affording a pro se inmate's pleadings liberal construction, might treat § 1983 claims such as these to be, instead, claims seeking habeas relief under 28 U.S.C. § 2254.  See McWilliams v. Colorado, 121 F.3d 573, 574-75 (10th Cir. 1997).  But this court has recognized that, because of the "strict limitations" the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") places on second or successive habeas claims, a state prisoner "may prefer to have his claim dismissed rather than be recharacterized as a § 2254 claim because of the potential consequences with respect to any § 2254 claim he may file in the future."  Davis, 425 F.3d at 835.  For that reason, the district court did not abuse its discretion in dismissing these claims.  But Padilla may be able to

9

reassert them in a habeas petition seeking relief under 28 U.S.C. § 2254.

However, such a petition would generally name as the respondent only the person who has custody over the inmate. See Rumsfeld v. Padilla, 542 U.S. 426, 434 (2004) (citing 28 U.S.C. §§ 2242, 2243). And § 2254 claims are subject to 28 U.S.C. § 2244(d)'s one-year limitations period. We express no opinion, of course, whether Padilla is now barred by the one-year statute of limitations period from bringing such a claim.

**B.  Padilla's claims challenging the execution of his sentence**

Several of Padilla's allegations challenge, not the fact of his conviction and sentence, but the execution of that sentence. For instance, Padilla asserts that the DOC is improperly calculating his sentence by refusing to award him earned and good time credit for the time Padilla spent in jail prior to his being sentenced for his Colorado conviction. In addition, Padilla contends that the Colorado parole procedures are unconstitutional, and that the parole commission's application of "harsher guidelines" violates the Constitution's Ex Post Facto Clause. As relief for these alleged constitutional violations, Padilla requests

> new parole procedures, a new parole hearing in which Colorado Parole authorities in their discretion decide to shorten my prison term by putting mandatory parole inside my 'sentence.' I am asking for an immediate parole hearing in accordance to statutory laws and administrative rules. I am requesting a new parole hearing conducted under constitutionally proper procedures and [an] injunction [sic] ordering the state to comply with constitutional due process and ex post facto requirements in the future.

10

Instead of asserting these claims under 42 U.S.C. § 1983, Padilla must present claims challenging the execution of his sentence in a petition seeking habeas relief under 28 U.S.C. § 2241. See Davis, 425 F.3d at 833; Dulworth v. Evans, 442 F.3d 1265, 1268 (10th Cir. 2006); see also Wilkinson, 544 U.S. at 78-82.[4] The district court, therefore, did not err in dismissing these § 1983 claims. Again, Padilla may seek to reassert these claims in a habeas petition seeking relief under 28 U.S.C. § 2241. However, to do so, he must first exhaust any state court or administrative remedies he might have available, or allege that such exhaustion would be futile. See Magar v. Parker, 490 F.3d 816, 818 (10th Cir. 2007); Dulworth, 424 F.3d at 1268-69; Montez v. McKinna, 208 F.3d 862, 866 (10th Cir. 2000). And, again, § 2241 claims are also subject to 28 U.S.C. § 2244(d)'s one-year limitations period. See Dulworth, 424 F.3d at 1268. We express no opinion whether such claims are now barred by the one-year statute of limitations.

---

[4]To the extent that Padilla is challenging the fact that the state court sentenced him to a mandatory term of parole, such a claim should be asserted as a claim for habeas relief under 28 U.S.C. § 2254. Further, an inmate can properly challenge parole procedures under 42 U.S.C. § 1983 if all he is seeking is to overturn those procedures and if he is not seeking his immediate or a speedier release into the community. See Wilkinson, 544 U.S. at 82. But it appears clear that what Padilla is seeking in this action is his immediate or at least a speedier release. Such a claim must be asserted as a claim for habeas relief under 28 U.S.C. § 2241. See Wilkinson, 544 U.S. at 82; Davis, 425 F.3d at 833.

11

**C.    Padilla's § 1983 claims calling into doubt his conviction and sentence**

Padilla also alleges several claims for damages, asserted under 42 U.S.C. § 1983, that call into question his Colorado theft conviction and sentence. For example, Padilla alleges that the Adams County, Colorado district attorney and two assistant district attorneys conspired with the state trial judge and Padilla's own public defenders to "mistreat" Padilla and to "trap" him into agreeing to a plea agreement that the Government later breached. Padilla also accuses "the district attorney's office" of participating "in vexatious prosecution" against him.

Heck v. Humphrey precludes Padilla from asserting these claims unless and until he succeeds in getting his conviction or sentence overturned. See 512 U.S. 477, 486-87 (1994); see also Davis v. Kan. Dep't of Corr., 507 F.3d 1246, 1249 (10th Cir. 2007). Ordinarily, a court faced with § 1983 claims precluded by Heck will dismiss those claims without prejudice, even under 28 U.S.C. § 1915, in order to permit the plaintiff to reassert them again later should he succeed in overturning his conviction or sentence. See Fottler v. United States, 73 F.3d 1064, 1065 (10th Cir. 1996) (addressing dismissal as frivolous under prior § 1915(d)). Nonetheless, in this case, the district court did not abuse its discretion in simply dismissing these claims as frivolous because the defendants against whom Padilla asserted these claims are not amenable to suit under § 1983, based upon the facts as Padilla alleges them.

12

The state trial judge enjoys absolute immunity from claims for money damages stemming from his judicial actions. See Mireles v. Waco, 502 U.S. 9, 9-10 & 10 n.1 (1991) (per curiam); see also Stump v. Sparkman, 435 U.S. 349, 362 (1978). So, too, do the prosecutors enjoy absolute immunity for actions they have taken within the scope of their "duties in initiating and pursuing a criminal prosecution." Imbler v. Pachtman, 424 U.S. 409, 410 (1976); see also Mink v. Suthers, 482 F.3d 1244, 1258-62 (10th Cir. 2007), cert. denied, 128 S. Ct. 1122 (2008).

The public defenders who represented Padilla, on the other hand, do not "act under color of state law" when "performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." Polk County v. Dodson, 454 U.S. 312, 325 (1981). Thus, Padilla's public defenders are not state actors subject to suit under 42 U.S.C. § 1983. See Dodson, 454 U.S. at 314, 317-25.

For these reasons, the district court did not abuse its discretion in dismissing these claims.

**D.**    **Padilla's claims challenging the conditions of his confinement**

Padilla asserts four § 1983 claims challenging the conditions of his confinement. "[A] § 1983 action is the proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life." Preiser, 411 U.S. at 499. Here, Padilla challenges prison officials' refusal to place him in community corrections, the prison mailroom staff's impeding Padilla's access to

13

the courts, prison grievance procedures generally, and the expense of making a collect telephone call from prison.

## 1. Prison officials' refusal to place Padilla in community corrections

Padilla alleges that the "Colorado Department of Corrections, Division of Adult Parole and Community Corrections and case management department have discriminated against plaintiff, because there is not enough bed space to be placed in community corrections and have changed procedures and guidelines for placement." We interpret Padilla's claim to be one seeking confinement at a lower security level, which is a claim cognizable under § 1983.[5] See Boutwell v. Keating, 399 F.3d 1203, 1209 (10th Cir. 2005) (citing Meachum v. Fano, 427 U.S. 215, 218, 222-23 (1976)).

Padilla's assertion that defendants have "discriminated" against him, liberally construed, could implicate the Equal Protection Clause's directive that the government treat similarly situated individuals the same absent a rational basis for disparate treatment. See Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n, 483 F.3d 1025, 1031 (10th Cir. 2007). Because Padilla "does not claim that the defendants treated him differently because of any suspect

---

[5]On the other hand, a claim seeking to be placed on parole is a claim that must be asserted in a petition for habeas relief. See Boutwell v. Keating, 399 F.3d 1203, 1209 (10th Cir. 2005). But we do not interpret Padilla's allegations to suggest that the community corrections program in which he seeks placement is analogous to parole.

classification," however, he "must prove that the distinction between himself and other inmates was not reasonably related to some legitimate penological purpose." Templeman v. Gunter, 16 F.3d 367, 371 (10th Cir. 1994); see also Helm v. Colorado, 244 Fed. Appx. 856, 859 (10th Cir. July 25, 2007) (unpublished). Padilla's equal protection claim here fails because he has not identified any inmate, similarly situated to Padilla, that defendants have placed in community corrections. See Keck v. Zenon, 240 Fed. Appx. 815, 819-20 (10th Cir. July 20, 2007) (unpublished) (affirming dismissal of equal protection claim under 28 U.S.C. § 1915(e)(2)(B)); see also Abbott v. McCotter, 13 F.3d 1439, 1441 (10th Cir. 1994) (upholding dismissal of conclusory equal protection claim for frivolousness).

Padilla's reference to changes in the procedures and guidelines for placement in community corrections, liberally construed, might implicate a procedural due process argument. "The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property and those who seek to invoke its procedural protection must establish that one of these interests is at stake." Wilkinson v. Austin, 545 U.S. 209, 221 (2005). Padilla's claim appears to suggest that he has a liberty interest in his placement in community corrections. See Boutwell, 399 F.3d at 1211. "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or

15

policies." Estate of DiMarco v. Wyo. Dep't of Corr., 473 F.3d 1334, 1339 (10th Cir. 2007); see also Boutwell, 399 F.3d at 1212.

Ordinarily an inmate "is not entitled to a particular degree of liberty in prison." Templeman, 16 F.3d at 369; see also Meachum, 427 U.S. at 225 (noting that "the Due Process Clause in and of itself" does not "protect a duly convicted prisoner against transfer from one institution to another within the state prison system"); Overturf v. Massie, 385 F.3d 1276, 1279 (10th Cir. 2004) (holding "inmates have no protected liberty interest in the location of their confinement"). Therefore, "[t]here is no federal constitutional right to incarceration in a particular prison." Montez, 208 F.3d at 866. "Confinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose." Meachum, 427 U.S. at 225. Thus, refusing to lower his prison classification would not implicate a liberty interest stemming directly from the Due Process Clause. Cf. Boutwell, 399 F.3d at 1212 (allegations that prison officials' refusal to release an inmate to a program analogous to parole "failed to allege facts necessary to create an inherent constitutional liberty interest).

On the other hand, "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." Sandin v. Conner, 515 U.S. 472, 483-84 (1995); see also DiMarco, 473 F.3d at 1339. But those "interests will be generally limited to freedom from restraint which, while not

16

exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless, imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484; see also DiMarco, 473 F.3d at 1339; Trujillo, 465 F.3d at 1225.

Padilla does not specifically identify any state law giving him a liberty interest in placement in community corrections. Nor is he complaining that his classification was changed to inflict greater hardships, "atypical and significant," on him "in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484. Instead, he alleges only that defendants have refused to change his custody classification to a level that imposes fewer restrictions "in relation to the ordinary incidents of prison life." Id. In light of that, the district court did not abuse its discretion in dismissing this claim. See Keck, 240 Fed. Appx. at 818, 820.

It is possible that Padilla's reference to changed procedures and guidelines for placement in community corrections, liberally construed, might also implicate the Ex Post Facto Clause.

> To show a violation of the Ex Post Facto Clause, a prisoner must show that he has been subjected to a penal or criminal law that is retrospective, and disadvantageous to the offender because it imposes greater punishment. The law must alter the definition of criminal conduct or increase the punishment for the crime.

17

Reed v. McKune, 298 F.3d 946, 954 (10th Cir. 2002). The Ex Post Facto Clause applies to both legislative acts and "agency regulation which is legislative in nature." Smith v. Scott, 223 F.3d 1191, 1193-94 (10th Cir. 2000).

If Padilla is asserting an ex post facto claim, it too fails. While "[r]etroactive changes in laws governing parole of prisoners, in some instances, may" violate the Ex Post Facto Clause, Garner v. Jones, 529 U.S. 244, 250 (2000), as we understand his pleadings, Padilla alleges only that prison officials will not lower the security level at which he is currently confined. "[N]ot every retroactive procedural change creating risk of affecting an inmate's terms or conditions of confinement is prohibited." Id.

For these reasons, the district court did not abuse its discretion in dismissing these claims.

2.      **Prison mailroom's impeding Padilla's access to the courts**

Padilla alleges: 1) the "Arkansas Valley Correctional facility mailroom is very bizarre to say the least;" 2) Defendant Sgt. Kurtz is a "rogue" guard who refused to follow DOC policies and who has impeded Padilla's access to the courts; and 3) Defendant Lt. Steinbeck has been told about Kurtz, but refuses to do anything about her.

Allegations that prison officials' conduct has impeded an inmate's access to the courts is actionable under § 1983. See Trujillo, 465 F.3d at 1226. Nevertheless, "[t]o state a claim for denial" of the right of access to the courts,

18

Padilla "must show that any denial or delay of access to the court prejudiced him in pursuing litigation." Id. (quotation omitted). Padilla's claim here fails because he has not alleged any specific prejudice that he has suffered because of defendants' conduct. Cf. id. at 1226-27 (holding inmate alleged a sufficient injury by asserting that defendants' actions prevented him from filing a state habeas petition). The district court, therefore, did not abuse its discretion in dismissing this claim.[6]

### 3. Prison grievance procedures

Padilla alleges that: 1) "[t]he Arkansas Valley Correctional facility is a run-a-way prison" whose "grievance system and this facility just doesn't work;" 2) the prison staff does not follow protocol or time deadlines provided for in the grievance procedures; and 3) Defendant Warden Archuletta "look[s] the other way." Padilla appears to be specifically challenging the prison staff's telling him that complaints Padilla filed were "non grievable issues." Because these allegations are so vague, the district court did not abuse its discretion in dismissing this claim. See Fogle, 435 F.3d at 1263 n.7 (concluding claim supported by conclusory allegations is frivolous).

---

[6]In addition to the right of access to the courts, "[c]orrespondence between a prisoner and an outsider implicates the guarantee of freedom of speech under the First Amendment and a qualified liberty interest under the Fourteenth Amendment." Treff v. Galetka, 74 F.3d 191, 194 (10th Cir. 1996); see also id. at 194-95. But Padilla's allegations do not implicate this or any other constitutional right beyond his right to access the courts.

19

**4.      Prices for making collect telephone calls**

Finally, Padilla alleges that Defendant(s) Value Added Communications, Zero Plus Dialing Inc., apparently a private company (or companies) that provides phone service to inmates at the Arkansas Valley Correctional Facility, "are over-charging families with a monopoly in the collect call system.  Profeting [sic] outrageous amounts from families. . . . Very outrageous.  Offenders have access to a reasonably priced services [sic]."

The district court dismissed this claim as frivolous, holding Padilla does not have "standing to raise a claim on behalf of the prisoners' families."  We agree.

In addition, Padilla also appears to be asserting that inmates, too, have a right to reasonably priced telephone service.  He would arguably have standing to assert such a right.  See generally Wirsching v. Colorado, 360 F.3d 1191, 1198-99 (10th Cir. 2004) (addressing inmates' limited First Amendment right to familial association).  Nevertheless, we agree with the district court when it stated that it knew "of no constitutional right to not incur an increase in the price of a collect call."  Thus, the district court did not abuse its discretion in dismissing these claims.  Cf. United States v. Verdin-Garcia, 516 F.3d 884, 895 (10th Cir. 2008) (noting use of prison telephone is a privilege, not a right).

20

## V. Conclusion

For the foregoing reasons, we AFFIRM the district court's decision to dismiss Padilla's 42 U.S.C. § 1983 action. We remind Padilla of his continuing obligation to make partial payments until the full amount of is appellate filing fee is paid.

The mandate shall issue forthwith.

Entered for the Court

David M. Ebel
Circuit Judge